**ÆTNA FINANCE COMPANY, Defendant, Appellant,**

v.

**James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff, Appellee.**

**No. 5206.**

United States Court of Appeals First Circuit.

July 23, 1957.

Harold H. Levin, New York City, with whom Matthew W. Goring, Providence, R. I., Charles S. Kelly and Floyd E. Britton, Chicago, Ill., Hinckley, Allen, Salisbury & Parsons, Providence, R. I., Proskauer, Rose, Goetz & Mendelsohn, New York City, and Hubachek & Kelly, Chicago, Ill., were on brief, for appellant.

Bessie Margolin, Asst. Sol., Washington, D. C., with whom Stuart Rothman, Sol., Sylvia S. Ellison and Lawrence P. Hochberg, Attys., United States Dept. of Labor, Washington, D. C., and Thomas L. Thistle, Regional Atty., Boston, Mass., were on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

The present appeal is from a judgment of the United States District Court for the District of Rhode Island enjoining the defendant from violating the provisions of §§ 15(a) (2) (wages and hours) and 15(a) (5) (record-keeping requirements) of the Fair Labor Standards Act of 1938, as amended, 52 Stat. 1068, 63 Stat. 919, 29 U.S.C.A. § 215(a) (2, 5). More specifically, as applied to § 15(a) (2), the district court's judgment directed as follows: "The defendant shall not, contrary to Section 7 of the Act, 29 U.S.C.A. § 207, employ any of its employees engaged in commerce or in the production of goods for com-

merce, as defined by the Act, for a work-week longer than forty (40) hours, unless the employee receives compensation for his employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed."

The complaint filed by the Secretary of Labor charged that the defendant, at its branch office located in Providence, Rhode Island, was, in respect to its employees there employed, repeatedly and consistently violating the record-keeping regulations promulgated under the Act, and also was violating the provisions of § 7 of the Act with respect to payment of wages at a rate of not less than one and one-half times the regular rate for hours worked in excess of the statutory maximum of 40 hours per week.

Aetna Finance Company, defendant-appellant herein, is a Missouri corporation, with headquarters in St. Louis, Missouri, operating a nationwide business of making installment loans, with attendant collection and credit investigation activities, through a large number of lending subsidiaries, and branch offices, located throughout the United States. This large chain organization makes more than 170,000 loans, in a total amount of more than $52,000,000 annually. It employs approximately 700 employees, of whom 650 are employed in branch offices. The individual borrowers deal only with defendant's employees at the respective branch offices, including that at Providence. However, the business is highly integrated and centrally controlled in detail out of the St. Louis headquarters. In the operation of the business there is a constant interstate flow of funds, documents, instructions, information and correspondence.

At its branch office in Providence defendant has thirteen employees, a manager, admittedly exempted as an "executive" under the provisions of § 13(a) (1) of the Act, 29 U.S.C.A. § 213(a) (1), three assistant managers, three outside representatives, five bookkeeper-cashiers, and a merchant representative. The employees in the Providence office are paid semi-monthly by checks sent from the home office, which also keeps the Providence office furnished with forms, stationery, envelopes, pencils and other supplies. Whenever the balance to the credit of defendant in its Providence bank exceeds $2,000, a check for such excess is drawn by the Providence manager and sent to the home office; during a period of about two years there were 94 such remittances, amounting in the aggregate to $669,000. Most of the applicants for loans from the Providence office naturally come from Rhode Island; but of the 3,412 loans outstanding as of September 30, 1955, over four per cent thereof were made to residents of Massachusetts and Connecticut, and substantial portions of the working time of the outside representatives, or of the assistant managers, was occupied with making visits to such borrowers outside the state, or keeping in contact with them by telephone or by correspondence. Borrowers who remove to other states customarily have their loan accounts transferred to another branch office. The merchant representative calls on merchants to solicit business from their customers, and in so doing regularly visits Attleboro, Mass., once or twice each month; he makes weekly reports of his activities, a copy of which is forwarded to the home office. The bookkeeper-cashiers type loan payment records and other information requisite for the completion of the loan register and payment register, prepare the periodical reports which are sent to the home office, including a daily cash report; take and transcribe dictation, type new loan applications (all of which are sent to St. Louis), take and record payments; check credit information by telephone, etc.

The facts are not in dispute, and are covered more fully in a stipulation contained in the record.

■ On the stipulated facts, we agree with the conclusion of the district court, elaborated in its opinion, that the employees at the Providence branch office are "engaged in commerce" within the

meaning of the Act, and thus are within the general coverage of the Act.

Great reliance is placed by appellant upon a decision of the Third Circuit in Mitchell v. Household Finance Corp., 1954, 208 F.2d 667. We agree with the district court that that case is distinguishable on its facts. Furthermore, we are not at all sure that it would be followed by the Third Circuit today, in view of the enlightenment to be derived from later decisions of the Supreme Court, particularly Mitchell v. C. W. Vollmer & Co., Inc., 1955, 349 U.S. 427, 429, 75 S.Ct. 860, 99 L.Ed. 1196.

It remains to be considered whether the employees at the Providence office, assuming they are otherwise covered by the Act, are within the exemption of § 13 (a) (2) as employees of a "retail or service establishment".

As originally enacted, § 13 contained a long list of "exemptions" from the provisions of §§ 6 and 7, 29 U.S.C.A. §§ 206, 207 (dealing with wages and hours). Among these exemptions was that contained in § 13(a) (2) which stated that the provisions of §§ 6 and 7 should not apply to "any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce". The Congress thus had somewhat vaguely in mind the exemption of employees engaged in small businesses of a predominantly local character. But since the Congress did not undertake to define more specifically what it meant by a "retail or service establishment", it was natural, and altogether proper, that the Administrator should seek to establish interpretations giving § 13(a) (2) a restrictive application, as he proceeded to do in a series of interpretative bulletins. See Interpretative Bulletin No. 6, as revised and reissued June 16, 1941 (1942 WH Man. 326). That bulletin contained· an extensive list of service establishments deemed to be akin to retail establishments within the meaning of the exemption, including restaurants, barbershops, beauty parlors, funeral homes, shoe repair shops, but significantly not includ-

ing the business of making small loans. The businesses listed as exempt were said to be establishments operating in the same manner as retail establishments, the principal difference being that "their revenue is derived primarily from the sale of service instead of from the sale of merchandise."

The bulletin went on to point out that, in a broad sense, every business might be said to perform a "service", yet that no one would seriously urge that all types of businesses were eligible to be exempt as "service establishments" under § 13(a) (2). The Administrator stated that he had received inquiries from a large number of businesses, including banks, building and loan associations, personal loan companies, newspapers, electric and gas utilities, etc., each asserting that it was engaged in rendering "service". The bulletin continued: "Although we recognize that the foregoing companies perform service, it is nevertheless our opinion that establishments engaged in such businesses are not in the ordinary case sufficiently similar in character to retail establishments to be considered service establishments within the meaning of section 13(a) (2)."

This effort by the Administrator to construe the exemption of § 13(a) (2) restrictively so as to exclude "personal loan companies" was justified, as he pointed out, by a consideration of the other exemptions provided in § 13. The Administrator said: The long list of specific exemptions set forth in section 13 manifests a studied effort on the part of Congress precisely to designate the classes of employees to be exempted by the statute. Accordingly, one should be cautious in attempting to stretch the exemptions of section 13(a) (2) so as to cover cases which were not patently intended to be included or which could have been designated easily and accurately in a specific exemption."

In 1949 the Congress passed various amendments to the Fair Labor Standards Act. Included among these was a rewriting of the exemption contained in § 13(a) (2) so as to exempt from the

provisions of §§ 6 and 7 "any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry". Appellee has submitted to us a lengthy supplemental appendix to its brief giving in detail the legislative background and history of this 1949 amendment. These materials unmistakably disclose that the primary purpose of the 1949 amendment to § 13(a) (2) was to abolish the so-called "consumer use" test which the Administrator had been applying in determining whether a sale of goods or services was retail; that is, the Administrator had ruled that a retail establishment was engaged in selling goods "to private individuals for personal or family consumption" and, analogously, that a service establishment was "one which performs service for private individuals for personal or family use", as distinguished from establishments which "perform similar activities for business or industrial customers"—an interpretation which had received the approval of the Supreme Court in Roland Electrical Co. v. Walling, 1946, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383.

■ The legislative history is completely devoid of any indication of an intention on the part of the Congress to include within the meaning of the exemption the employees of small loan companies. Upon the contrary, the sponsors of the legislation, and the committee reports, made it explicitly clear that the proposed amendment would do nothing to change the non-exempt status of "banks, insurance companies, *credit companies*, newspapers, telephone companies, gas and electric utility companies, telegraph companies, etc." (Italics added.) Appellant is quite unconvincing in its suggestion that the phrase "credit companies" was not intended to include small loan companies (whose sole function in fact is to lend money on credit).

There was evidence offered by the defendant to the effect that, in the small loan industry, there was some disposition (in a more or less rough analogy borrowed from the mercantile field) to refer to small loans to individuals as "retail financing" in contrast to "wholesale" lending institutions which dealt with industry through either buying accounts receivable or financing inventories. Such usage hardly has relevance to the intended meaning of the term "service establishment" as used in § 13(a) (2). Moreover, there was testimony by a government expert to the effect that he had never heard of the term "retailing of credit" as applied to the operations of a small loan business. In addition to that, the sponsors of the amendatory legislation repeatedly disavowed an intention to permit each industry to decide for itself whether it was conducting a "retail or service establishment" within the meaning of the exemption.

In short, we agree with the finding of the district court that "the defendant has failed to show that the employees of its Providence office who are engaged in commerce plainly and unmistakably fall within the terms or spirit of the exemption specified in section 13(a) (2) of the Act, as amended. In the absence of such showing the exemption is inapplicable to them." 144 F.Supp. at page 535.

A judgment will be entered affirming the judgment of the District Court.