289 F.2d 278
 James P. MITCHELL, Secretary of Labor, United States Department of Labor (Arthur J. Goldberg, Secretary of Labor, substituted as party appellant in the place and stead of James P. Mitchell, resigned), Appellant,
v.
TRADE WINDS COMPANY, Appellee.
 No. 18465.
 United States Court of Appeals Fifth Circuit.
 April 20, 1961.
 
 Jacob I. Karro, Atty., Bessie Margolin, Asst. Solicitor, Harold C. Nystrom, Acting Solicitor of Labor, Isabelle R. Cappello, Atty., United States Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., Birmingham, Ala., for appellant.
 John Bacheller, Jr., Atlanta, Ga., Fisher & Phillips, Atlanta, Ga., for appellee.
 Before TUTTLE, Chief Judge, and JONES and WISDOM, Circuit Judges.
 TUTTLE, Chief Judge.
 
 
 1
 Before dealing with this appeal on the merits, we consider it appropriate to discuss briefly appellee's motion to strike certain material printed as an appendix to the appellant's brief. This appendix consists of letters and memoranda from the files of the Department of Labor offered for the purpose of showing the interpretation given by the Secretary to the exemption here in litigation. We know of no basis on which it would be legally permissible for such file of correspondence to be injected into litigation at the appellate court level. If such correspondence was relevant to the issue being tried in the district court, it should have been tendered in evidence in the usual way. Without the necessity for a formal order striking the subject matter contained in Appendix C of appellant's brief, entitled "Letters and Memoranda from the Files of the Department of Labor," we hold that they are not to be considered on this appeal.
 
 
 2
 On the merits of the appeal we are to consider the correctness of a decision by the trial court that employees of the appellee, engaged in a plant at Thunderbolt, Georgia, are exempt from the provisions of the Wage and Hour Law because they are engaged in the "processing of fish, shellfish, crustacea, or other aquatic forms of life," within the meaning of Section 13(a) (5) of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq.
 
 
 3
 Appellee is not engaged, so far as concerns this record, in the gathering of shrimp. It is engaged in preparing purchased shrimp for the market by "breading" it. It uses fresh shrimp for some 70 to 80% of its operation, and frozen shrimp for the remainder. To some extent it is more desirable to use the fresh shrimp. The operations in the plant were described by appellee's president as follows:
 
 
 4
 "Now, after they [the shrimp] are laid on this belt, this belt goes through the first tank. The first tank is an egg batter mixture. We call it a batter mixture. The belt is going through it all the time and it comes out of that batter into a water fall of cracker meal, and it falls on a belt of cracker meal and cracker meal rains down on top of it and through a second operation identical, a batter tank, another breading tank and out into the pans. As it comes out of this last machine it is completely breaded and they are put in pans and from there it is fed to these tables where the girls, a different group of girls, take them out of these pans and place them in cardboard boxes and weigh them according to whatever size it is, whether it is a lb. box or a 5 lb. box or a 10 lb. box, weigh them, shut them up and from there it goes on a conveyor machine to a wrapper machine, or on a conveyor belt to a wrapper machine."
 
 
 5
 The breading materials constitute from 40 to 49% of the finished breaded shrimp by weight.
 
 
 6
 Neither the employees engaged on this production line nor the office or maintenance employees are considered by the appellee to be covered by the Wage and Hour provisions of the Act. It is conceded that no effort was made by appellee to comply with the Wage and Hour requirements as to any of its employees. The trial court held: (1) that the activity just described was comprehended within the term "processing," as contemplated in the Act, and (2) that all employees were exempt in addition to those actually engaged in the "processing" activity.
 
 The applicable statute is:
 
 7
 "Section 13.(a) The provisions of sections 6 and 7 shall not apply with respect to * * * (5) any employee employed in the catching, taking, harvesting, cultivating, or farming of any kind of fish, shellfish, crustacea, sponges, seaweeds, or other aquatic forms of animal and vegetable life, including the going to and returning from work and including employment in the loading, unloading, or packing of such products for shipment or in propogating, processing (other than canning), marketing, freezing, curing, storing, or distributing the above products or byproducts thereof; * * *"
 
 
 8
 In his appeal here the Secretary of Labor concedes that the word "processing" is a word of broad enough meaning, if used without reference to any implied or express limitation, to include such activities as the preparation by a chef in a restaurant of shrimp gumbo. He, therefore, takes the position that some much more restricted meaning must have been intended by Congress. He urges that the language of the Act clearly indicates that the restrictions in the meaning of the word as used are such as relate to the fishing or shrimping activity, and which are themselves an activity that is subject to the same kind of pressures of weather and other conditions of nature and of time and season that warrant the seafood exemption. He refers particularly to the fact that the exemption for processing comes within a clause introduced by the word "including," and "including" follows the main language of the exemption, "employed in the catching, taking, harvesting, cultivating or farming of any kind of * * * crustacea, etc." The argument is that processing cannot comprehend anything other than an activity that has a direct relationship to catching, taking, harvesting, cultivating, or farming of crustacea.
 
 
 9
 The position urged here by the Secretary is supported to such extent that administrative interpretations, unchanged by intervening legislation, may give support to a particular interpretation of statutory language. It is undoubtedly clear that for many years the Secretary has repeatedly announced his position in construing this language in the following terms:
 
 
 10
 "* * * The language `processing * * * (fish) products or byproducts thereof' apparently means those processing operations closely connected with the physical catching of the fish which are performed incidental to, and immediately following, the catch. Examples of such exempt processing operations are the cleaning of fish and other treatment of them prior to marketing and the processing of fish byproducts into dried scrap and fish meal. Manufacturing operations performed on fish products and byproducts which are not affected to a considerable extent by natural factors, and are conducted under conditions typical of manufacturing industries apparently are not exempted by section 13(a) (5) * * *"
 
 
 11
 The appellee's position, as supported by the trial court, is that so long as the shrimp retains its identity, as described in the exemption, then any activity which involves the handling of the shrimp or adding other substances to it in preparing it for market is within the term "processing." The trial court said in its conclusions of law:
 
 
 12
 "* * * Where, a product retains its essential identity from the time it is caught until it is marketed, where the process through which it passes is a continuous and uninterrupted one from unprocessed shrimp to breaded packaged shrimp, where the season, size of individual shrimp and the high perishability of the product significantly affect the processing operation, and where the added ingredients are obviously incidental and not a principal object of the processing, the resulting product is a fish, shellfish, crustacea or other aquatic form of animal life and the processing, marketing, freezing, storing and distribution of it are exempt from Sections 6 and 7 of the Act. Such is the case presently before this court."
 
 
 13
 As we have indicated, the Secretary's position is supported by his early interpretation of the Act to the extent that he expressed the view that only those activities should be considered as processing that were affected by the natural forces that caused Congress to create the exemption in the first instance. He urges that not only is this interpretation entitled to "great weight," Steinmetz v. Mitchell, 5 Cir., 268 F.2d 501, but it should be considered as having received the "unique imprimatur" of Congress, Libby, McNeil & Libby v. Mitchell, 5 Cir., 256 F.2d 832, 837. This because, in adopting the 1949 amendment to the law, Congress expressly provided that existing interpretations of the Administrator or of the Secretary of Labor "shall remain in effect."
 
 
 14
 We think the recognized basic authority as to the recognition to be accorded ex parte administrative rulings by the Secretary of Labor in administering the Wage and Hour law is that stated by the Supreme Court in Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124:
 
 
 15
 "We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."
 
 
 16
 We consider that this formula is the one by which we are to weigh the administrative interpretation in this case. Although the appellant's brief asserts that the amendatory Act of 1949 "expressly declared * * * that existing administrative interpretations not inconsistent with the amendments shall remain in effect," he fails to include in the text of his argument the rest of the section which is "as an order, regulation, interpretation * * *" It is plain, therefore, that all this provision was intended to accomplish was to negative the idea that following the amendment it would be necessary for the Secretary to promulgate new orders, regulations and interpretations as to matters not changed in the Act. It was not intended to, and, of course, it did not, incorporate the prior existing orders, regulations and interpretations as part of the statutory enactment.
 
 
 17
 Giving the administrative interpretation, together with the legislative history, such weight as they deserve, we find that they are not sufficient to permit us to assign to the word "processing" any meaning that is more restricted than is ordinarily ascribed to it. It is to be noted that the Wage and Hour law itself makes a distinction between "first processing," and "processing." Section 7(c) of the Act grants an agricultural exemption in connection with "first processing." For reasons sufficient to Congress, the exemptions here are to processing generally and are not restricted as is the case under Section 7(c). In his brief before us the Secretary says:
 
 
 18
 "The term `processing' is not defined in the Act. It is clear, however, that the term is not used in Section 13(a) (5) in its fullest possible connotation."
 
 
 19
 In view of the distinction made by Congress itself where it sought to limit the generality of meaning of the word by exempting only the first processing in other sections of the law, we cannot agree with this argument that Congress did not mean whatever is normally comprehended within the meaning of the word "processing" which it used here.[1]
 
 
 20
 There is nothing in Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52, that is inconsistent with our holding here. The decision by that Court that the manufacturer of pearl buttons did not constitute processing of crustacea is too plain to require the broad reasoning which that Court indulged in to arrive at its decision. The making of pearl buttons out of oyster shells constituted a processing of the "crust" instead of the "crustacea." It obviously did not fall within the exemption.[2]
 
 
 21
 We conclude that under the language used by Congress to spell out the exemption, the activities engaged in by the operators described above was processing of crustacea within the terms of the Act.
 
 
 22
 We come next to the other question: did the exemption apply to all of the employees of the plant or only to those engaged in the exempt activity?
 
 
 23
 Again we note that the Wage and Hour law dealt with both kinds of exemptions. Some exempted all employees, as, for instance, the exemption of employees "in an industry * * * of a seasonal nature," Section 7(b) (3), and "any employee employed in connection with the publication" of a certain classification of "newspaper," Section 13(a) (8). Also Sections 13(a) (2) and 13(a) (4) exempt employees engaged in a particular type of "establishment." On the other hand the section with which we are concerned grants the exemption to "any employee employed in the catching, taking, harvesting, cultivating, or farming * * * including * * * processing * * *" We think our decision in Walling v. W. D. Haden Co., 5 Cir., 153 F.2d 196, certiorari denied 328 U.S. 866, 66 S.Ct. 1373, is authority for the proposition that the exemption before us here is restricted to those employees engaged in the exempt activity.
 
 
 24
 However, this does not necessarily mean that only those employees on the processing line who actually come into physical contact with the shrimp are exempt. This Court has held in Waller v. Humphreys, 5 Cir., 133 F.2d 193, that other employees, there two firemen, were "substantially engaged in work necessary to the processing, for without steam and brine the work could not go on." At page 194. Since that case dealt with the precise exemption we are now concerned with, that decision is binding on us,[3] and we must hold that any employee of this appellee whose employment was as directly and necessarily a part of the processing activity as were the employees in Waller v. Humphreys are exempt, not because they were employed in an establishment or industry that processed shrimp, as held by the trial court, but because they were themselves "employed in processing * * *". The initial determination of which, if any of the other employees fall within the exempt class, must be made by the trial court.
 
 
 25
 To the extent that the judgment of the trial court held those employed in breading the shrimp were exempt as processing employees, the judgment is affirmed. To the extent that the judgment held that all employees were exempt, it was in error and the case must be remanded for further proceedings not inconsistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 In discussing the meaning of another word used in a different exemption in this same law, we have said: "Since the Act does not define the word seaman, it must be taken in its ordinary meaning." Walling v. W. D. Haden Co., 5 Cir., 153 F.2d 196, 199, certiorari denied 328 U.S. 866, 66 S.Ct. 1373, 90 L.Ed. 1636
 
 
 [2]
 It is true that the word crustacea is derived from the Latin word for shell, but the English term as defined refers only to the animals which inhabit the shells. All the words used in the exemption refer to "living things." Walling v. W. D. Haden Co., supra, footnote 1
 
 
 [3]
 We do not think that case has been overruled or modified by Walling v. W. D. Haden Co., supra. The exemption there under consideration was expressed "employees employed as seamen." Clearly, the only test applicable in such an exemption is the personal individual activity of the individual. Here the exemption is not in terms "employed as a processor," but rather "employed in processing."