Peter J. BRENNAN, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

GREAT AMERICAN DISCOUNT AND CREDIT COMPANY, INC., Defendant-Appellee.

No. 72–2177.

United States Court of Appeals, Fifth Circuit.

April 9, 1973.

Richard F. Schubert, Sol. of Labor, Carin Ann Clauss, Donald S. Shire, U. S. Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Sol., U. S. Dept. of Labor, Atlanta, Ga., for plaintiff-appellant.

Frank W. Riggs, John W. Davis, Montgomery, Ala., for defendant-appellee.

Before GEWIN, SIMPSON and RONEY, Circuit Judges.

RONEY, Circuit Judge:

The Government appeals from the District Court's determination that de-

fendant's employment agencies are entitled to the "retail or service establishment" exemption in Section 13(a)(2) of the Fair Labor Standards Act. 29 U.S.C.A. § 213(a)(2). We reverse.

Not only is this case one of first impression in this Court, but we are told that no other Court of Appeals has addressed the application of the retail or service establishment exemption to employment agencies.

Our analysis of the problem causes us to conclude that Congress did not intend to exempt employment agencies from the operation of the Act. Defendant Darrell Walker, president of the Great American Discount and Credit Company, Inc., is engaged in the business of operating employment agencies under various names and styles in Alabama and Tennessee. These agencies locate, on a local basis and without the assistance of other agencies, suitable employment for clients, who generally pay the placement fee. The service consists solely of introducing the job applicant and the prospective employer. The agencies are independent establishments and, although Walker communicates frequently with all of them, only rarely do they trade information.

Having agreed to dismiss the action against the Great American Discount and Credit Company, Inc., the Secretary of Labor proceeded against walker alone. The District Court found that Walker's interests in the various employment agencies constituted sufficiently unified operation and common control to amount to a single enterprise engaged in commerce under the statutory definition:

"[T]he related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units . . . ."

29 U.S.C.A. § 203(r).

The Court concluded, however, that Walker's businesses merited the "retail or service establishment" exemption in Section 13(a)(2), which exempts from the minimum wages and maximum hours requirements of the Act

"any employee employed by any retail or service establishment . . . if more than 50 per centum of such establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, and such establishment . . . has an annual dollar volume of sales which is less than $250,000 . . . ."

A "retail or service establishment" is defined in that provision as

"an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry . . . ."

Although the dollar volume of sales of the single enterprise consisting of all of the employment agencies owned by Walker either as sole proprietor or as a partner exceeded $250,000, none of the individual agencies ever exceeded $250,000 annual gross volume of sales. To obtain the exemption, therefore, Walker need show only that the individual agencies were retail and service establishments within the meaning of the Act.

Walker's claim rests on two arguments: (1) that although an early administrative ruling held that employment agencies were not exempt, a 1949 amendment to Section 13(a)(2) broadened the scope of the exemption to include businesses such as his; and (2) that his businesses meet the statutory requirements because there is industry recognition that its sales are "retail sales or services."

The employer has the burden of proof in establishing facts requisite to an exemption, Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694, reh. denied, 383 U.S. 963, 86 S.Ct. 1219, 16 L.Ed.2d

305 (1966); Schultz v. Louisiana Trailer Sales, Inc., 428 F.2d 61 (5th Cir.), cert. denied, 400 U.S. 902, 91 S.Ct. 139, 27 L.Ed.2d 139 (1971), and the exemption provisions are to be narrowly construed against those seeking to assert them, Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960).

From the beginning, the Fair Labor Standards Act of 1938 provided that retail establishments were exempt from the Act. The Department of Labor's Wage and Hour Administrator issued in 1941 an interpretative bulletin which characterized "retail establishments" as those businesses selling goods or services to private individuals for personal or family consumption or to businesses or state agencies if at prices and in quantities appropriate to personal or family consumption. The Administrator's general characterization of "retail establishments" was considered by the Supreme Court in 1946. In Roland Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383 (1946), the Court held *inter alia* that a business engaged in commercial wiring, electrical contracting for industry, and repair and replacement of electric motors and generators did not constitute a "retail or service establishment." It was suggested that no sale of any article for business or profit-making use, as opposed to personal consumption, could qualify as a retail sale. *See Roland Co., supra,* at 673–677, 66 S.Ct. 413; *see also* Martino v. Michigan Window Cleaning Co., 327 U.S. 173, 66 S.Ct. 379, 90 L.Ed. 603 (1946); Boutell v. Walling, 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786 (1946).

In 1949 Congress abrogated this "business use" test by amending the relevant sections of the Act. But Section 16(c) of the amendment expressly provided that any existing "order, regulation, or interpretation of the Administrator of the Wage and Hour Division or of the Secretary of Labor . . . shall remain in effect . . . except to the extent that . . . [it] may be in-

consistent with the provisions of this Act . . . ." 63 Stat. 920 (1949).

The 1941 Interpretative Bulletin had specifically dealt with employment agencies. It is there noted that, although employment agencies perform a service, they "are not in the ordinary case sufficiently similar in character to retail establishments to be considered service establishments within the meaning of Section 13(a)(2)." (Interpretative Bulletin No. 6, pp. 9–10, issued June 16, 1941, and printed in 1942 Wage and Hour Manual, pp. 334–335).

The Government argues that, in Section 16(c), Congress granted its unique imprimatur to the 1941 interpretation which excluded agencies from the exemption. Walker contends, on the other hand, that the 1941 interpretation was premised on the "business use" test, not upon the retail nature of the business, and therefore was inconsistent with the 1949 Amendment. Walker's position, as employer, is that, by eliminating the business use test, the 1949 Amendment broadened the scope of the Section 13(a)(2) exemption to include businesses such as his, which he contends are recognized as providing "retail" sales and services in the employment agency industry.

It was the opinion of the District Court that the exemption clearly applies to defendant's business practices. The Court found that virtually all the income of Walker's employment agencies is derived from transactions completed within the states in which they are located. Their service, which the Court referred to as "the location of a job for a customer," is not for resale. The District Court accepted a distinction between retail and wholesale employment agencies: Walker's, characterized by some witnesses as retail agencies, which seek to introduce individual employees directly to employers, and those characterized as wholesale agencies, which place large groups of potential employees in contact with other agencies representing potential employers. Thus, the Court found

that there is a distinction between wholesale and retail sales or services in the employment agency industry and that virtually all of the defendant's business is of a retail character.

The District Court distinguished employment agencies from the loan companies involved in Mitchell v. Kentucky Finance Co., 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959), on the ground that, since the credit business "obviously" is not a "retail or service establishment" and its status was not affected by the 1949 Amendment, the relevant portions of the interpretative bulletin which excluded loan companies from the retail concept should remain in effect. The District Court decided that the reason the Administrator denied the exemption to employment agencies was that their "sale of services" are not "to private persons to *satisfy their personal wants.*" When Congress abandoned the business use requirement, the Court reasoned, employment services were placed within the exemption.

We think the District Court failed to appreciate the threshold "retail concept" test which a business must first meet before the industry characterization of its sales can be considered. The Government correctly argues that it was the failure of employment agencies to meet this test which caused the Administrator to designate them as non-exempt in the 1941 Bulletin and that the elimination of the business use test did not change this fundamental determination.

The so-called expert testimony offered here to characterize the service as "retail" resembled that in loan company cases. In Aetna Finance Co. v. Mitchell, 247 F.2d 190 (1st Cir. 1957), the Court found the testimony to reflect nothing more than the

> disposition (in a more or less rough analogy borrowed from the mercantile field) to refer to small loans to individuals as "retail financing" in contrast to "wholesale" lending institutions which dealt with industry through either buying accounts receiv-

able or financing inventories. Such usage hardly has relevance to the intended meaning of the term "service establishment" as used in § 13(a)(2). 247 F.2d at 193.

In *Kentucky Finance, supra,* a business making small personal loans and purchasing conditional sales contracts from retailers claimed to be an exempt retail or service establishment. The Company offered evidence that the industry regarded its transactions as retail, but the Supreme Court denied the exemption on the basis of explicit discussion in the legislative history which stated that, industry parlance notwithstanding, the retail concept was not applicable to the credit industry.

In *Idaho Sheet Metal Works, supra,* the Supreme Court flatly rejected the "industry usage" standard for the retail concept, and the Court's conclusive consideration was that reliance on industry parlance "would compel results flatly inconsistent with those Congress explicitly contemplated and might indeed work a major revolution in the Act's coverage not acknowledged in any legislative statement or report before us." 383 U.S. at 201, 86 S.Ct. at 745. The Court reasoned that the legislative recital of certain industries, such as telephone, gas, and electric, "demonstrates that not everything the consumer purchases can be a retail sale of goods or services" and that industry usage is not controlling. 383 U.S. at 203, 86 S.Ct. at 746.

In *Idaho Sheet Metal Works, supra,* the Court clearly indicated a two-step process: (1) ask whether the sale of a particular type of goods or services can ever qualify as retail, whatever the terms of the sale; and (2) if—and only if—the answer is affirmative, is it then necessary to determine the terms or circumstances that make a sale of those goods or services a retail sale. 383 U.S. at 202–203, 86 S.Ct. 737.

What we are required first to determine, consequently, is whether the retail concept can ever apply to the employment agency industry.

Determination of whether a business fits the retail concept is not without difficulty. The Administrator concedes that "[t]here are types of establishments in industries where it is not readily apparent whether a retail concept exists and whether or not the exemption can apply." 29 C.F.R. § 779.317. In trying to define the characteristics of such an establishment, the regulations acknowledge that a precise line cannot be drawn and exact objective standards cannot be established. 29 C.F.R. §§ 779.312–779.321.

In this situation, courts have consistently relied upon the expertise of the agencies established by Congress to administer its statutes. *See* Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L. Ed.2d 561 (1970); Red Lion Broadcasting Co., Inc. v. FCC, 395 U.S. 367, 89 S. Ct. 1794, 23 L.Ed.2d 371 (1969).

From the inception of the Act, employment agencies have been on the Administrator's non-exempt list. The language of the administrative regulations supports this classification. Throughout the regulations are numerous references to "the traditional local retail or service establishment," 29 C.F.R. § 779.315; "establishments which are traditionally regarded as local retail service establishments such as . . . restaurants, hotels, barber shops, [and] repair shops," 29 C.F.R. § 779.314; and "that a 'retail concept' cannot be artificially created in an industry in which there is no traditional concept of retail selling or servicing." 29 C.F.R. § 779.316. Establishments "not having been traditionally regarded as retail or service establishment cannot under any circumstances qualify as a 'retail or service establishment' within the statutory definition of the Act, since they fail to meet the first requirement of the statutory definition." 29 C.F.R. § 779.316.

A comparison of the Administrator's partial list of establishments lacking a "retail concept," 29 C.F.R. § 317, with the partial list of establishments whose sales or services may be recognized as retail, 29 C.F.R. § 320, reflects the propriety of placing employment agencies on the non-exempt list.

A reading of the Administrator's attempts to characterize retail businesses buttresses the decision that the term "retail" is not properly applicable to employment agencies:

"The term 'retail' is alien to some businesses or operations. For example, transactions of an insurance company are not ordinarily thought of as retail transactions."

29 C.F.R. § 779.316.

"Typically a retail or service establishment is one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process. . . . Such an establishment sells to the general public its food and drink. It sells to such public its clothing and its furniture, its automobiles, its radios and refrigerators, its coal and its lumber, and other goods, and performs incidental services on such goods when necessary. It provides the general public its repair services and other services for the comfort and convenience of such public in the course of its daily living. Illustrative of such establishments are: Grocery stores, hardware stores, clothing stores, coal dealers, furniture stores, restaurants, hotels, watch repair establishments, barber shops, valet shops, and other such local establishments."

29 C.F.R. § 779.318(a).

 Although courts are not bound by interpretative bulletins, see 29 C.F.R. § 779.8, they provide us with guidance simply because they reflect the position

of those most experienced with the application of the Act. *See* Foremost Dairies, Inc. v. Wirtz, 381 F.2d 653 (5th Cir. 1967), cert. denied sub nom. Home Town Foods, Inc. v. Wirtz, 390 U.S. 946, 88 S.Ct. 1031, 19 L.Ed.2d 1134 (1968). The bulletins persuasiveness depends upon its thoroughness, its consistency, and the validity of its reasoning. Mitchell v. Trade Winds Co., 289 F.2d 278 (5th Cir. 1961). It is evident to us that the Administrator has considered all relevant issues.

Although of no more precedential authority than our own District Court, decisions of the only two other courts which have considered this matter have found employment agencies non-exempt. In Schussler v. Employment Consultants, Inc., 333 F.Supp. 1387 (N.D.Ill.1971), the Court had "no difficulty in concluding that an employment agency . . . does not involve what is customarily considered a retail service." 333 F. Supp. at 1390. In a case cited by the Administrator in his regulations, the New York City Municipal Court held that employment agencies "are not sufficiently similar in character to retail establishments to be considered 'service establishments' within the meaning of Section 13(a)(2)." Yunker v. Abbye Employment Agency, Inc., 32 N.Y.S.2d 715, 723 (Mun.Ct.1941).

We conclude that the District Court's decision to include employment agencies within the scope of the exemption contravenes the well established principle that exemptions from the Fair Labor Standards Act "are to be narrowly construed," *Kentucky Finance, supra,* 359 U.S. at 295, 79 S.Ct. 756, and limited to those "plainly and unmistakably within their terms and spirit." Arnold v. Ben Kanowsky, Inc., *supra,* 361 U.S. at 392, 80 S.Ct. at 456; Schultz v. Instant Handling, Inc., 418 F.2d 1019 (5th Cir. 1969); *see* Wirtz to Jernigan, 405 F.2d 155 (5th Cir. 1968).

Reversed and remanded.