BEN KANOWSKY, Inc., Appellant,

v.

John W. ARNOLD, Appellee.

No. 16603.

United States Court of Appeals
Fifth Circuit.
Dec. 10, 1957.

G. H. Kelsoe, Jr., Johannes & Kelsoe, Dallas, Tex., for appellant.

Joe H. McCracken, III, Carrington, Gowan, Johnson, Bromberg & Leeds, Dallas, Tex., for appellee.

Before CAMERON, JONES and WISDOM, Circuit Judges.

CAMERON, Circuit Judge.

Suing under the Fair Labor Standards Act.[1] "which creates the cause of action herein asserted by the plaintiff," appellee Arnold recovered judgment against appellant Ben Kanowsky, Inc. for overtime wages and attorney's fee [2] for the hours in excess of forty per week worked as appellant's employee. The appeal is based upon appellant's contention that the Federal statute did not apply to its operations, and in the alternative, that appellant's business was exempted from the provisions of the Act.[3] The appeal will be decided on the exemption, the terms of which are quoted in the footnote. The facts are simple and largely undisputed.

Ben Kanowsky, operating under appellant's corporate title, had conducted the business of furniture and interior decorating in the City of Dallas in a building

1. 29 U.S.C.A. § 216(b).

2. 29 U.S.C.A. § 207(a).

3. 29 U.S.C.A. § 213(a): "The provisions of sections 206 and 207 of this title shall not apply with respect to * * * (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of good or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; * * *"

next door to his residence for more than sixteen years. The business decorated the interiors of homes and offices, repaired and upholstered furniture, and made furniture to order and delivered it to its customers in Dallas.

Because its business was somewhat seasonal, he tried through the years to hit upon a side line "to take up the slack." He experimented with manufacturing for local sale chairs, screens and other items; and, at the time of appellee's employment, the side line consisted of "the fabrication of phenolic." [4] Appellant obtained these phenolic sheets from various sources in the State of Texas. Utilizing its lathes, saws and other machinery installed in connection with its furniture business, it fabricated the phenolic sheets into parts for airplanes and automobiles,[5] and it sold sheet phenolic to customers who desired to purchase it. Practically all of the items handled by appellant were delivered at its place of business, and less than three per cent were shipped out of the State.

To counter the undisputed proof of the basic nature of appellant's business as a retail furniture and decorating establishment, appellee testified that he spent nearly all of the period of a little less than a year he worked for appellant in the fabricating of these phenolic parts. He put on, as a part of his case, employees of the appellant and representatives of two airplane manufacturing companies to show that the parts purchased by them at appellant's place of business[6] were installed in airplanes manufactured for the United States Government; and from this and appellant's proof, it appeared that the dollar volume

of phenolic sales was slightly in excess of twenty-five per cent of appellant's total sales during the period covered by this testimony.[7] This was the only evidence in the record tending to bring in question the proof of the fundamental character of appellant's business. This proof did not show the portion of the phenolic sales which consisted of bulk phenolic, the portion which was sold for use locally in automobile repair, and it failed to show that any of it was for "resale."

Appellee kept his own time, turning in a ticket each day showing the hours worked, and was paid weekly. There is no evidence that he ever mentioned to his employer that he claimed time and one-half for overtime work, or that either he or the employer ever conceived or expressed any idea that the relationship between them was covered by the Fair Labor Standards Act.

The question of whether a business is within the Fair Labor Standards Act and, if so, whether it comes within the quoted exemption, remains an issue of fact to be decided according to the evidence presented in each case. The decisions of this Court bearing closest resemblance to this one on the facts are White Motor Co. v. Littleton, 5 Cir., 1941, 124 F.2d 92; Mitchell v. T. F. Taylor Fertilizer Works, Inc., 5 Cir., 1956, 233 F.2d 284, and Boisseau v. Mitchell, 5 Cir., 1955, 218 F.2d 734. In White, mechanics employed by the Dallas branch of a large truck manufacturing concern sued under the Fair Labor Standards Act for wages alleged to be due them, and this Court held that the case should have been dismissed because the operation was not

---

4. Defined by Kanowsky as "a phenol resin impregnated into a cotton cloth under extreme pressure and made into sheets."

5. Appellee thus described this phase of appellant's work: "[Phenolic] * * * is a thermo-setting plastic used for blocks, bumpers, fair leads, cable guides, pulleys. * * * It is used extensively in the aircraft industry, and in automobile timing gears."

6. In many cases, these parts were fabricated to conform to drawings furnished by the companies.

7. This proof showed that, during the period of appellee's employment, appellant's total sales aggregated $99,117.52, of which $33,125.95 "had to do in any way with phenolic."

subject to the Act. Some of the language of the opinion [8] is applicable here:

"Section 13(a) (2) of the Act provides that Section 6 thereof shall not apply with respect to any employee engaged in any retail or service establishment, the greater part of whose selling or servicing is in intrastate commerce. The establishment in which these employees were engaged sold the products manufactured by the parent organization elsewhere, serviced and performed specified changes in those products, and conducted a repair and reconditioning department. * * *

"The word *retail* is not defined by the Act. Given its common and ordinary acceptation when used in sales parlance, it means a sale in small quantity or direct to the consumer, as distinguished from the word *wholesale*, meaning a sale in large quantity to one who intends to resell. The character of the sale is not altered by the use to which the consumer may put the purchased commodity. These sales were preponderantly retail although the products sold were used subsequently for commercial purposes." [9]

▮ Much of the argument contained in appellee's brief stresses the contention that he was engaged in manufacturing, in that he spent most of his time in fabricating phenolic parts which found their way into the hands of aircraft manufacturers.[10] This, he contends, nullifies appellant's claim that it was a retail sales establishment. That argument is answered by our decision in Taylor, supra. There, the employer was conducting a dry mixing plant in which the various chemicals entering into fertilizer were assembled and mixed, and when the manufacturing process was completed, the fertilizer was delivered to customers from its plant in Georgia. While deliveries were so made from the plant, all sales were made either from an office several blocks away or by traveling salesmen who called on the farmers at widely separated places. The witnesses for the Secretary of Labor testified that sales to farmers were not retail sales, but were at wholesale because they were for farm use rather than for personal or household use. We rejected both the idea that the employer's business was not a sales establishment because what it sold was entirely manufactured by it, and the idea that it was not a retail establishment because its sales were to farmers who did not consume the fertilizer but used it for the growing of crops which, in most cases, were sold to others; and we held that the business came within the exemption under discussion.

▮ It is settled, of course, that upon proof that a business is engaged in commerce as defined by the Act,[11] the employer is under the burden of proving that it is, nevertheless, exempt from the Act's application because its business consists of the operation of a retail sales or service establishment. But such proof need be made only by a preponderance of the evidence and without the necessity of overcoming any presumptions.

8. 124 F.2d 93, 94.

9. This decision was rendered before the addition, by the Act of Oct. 26, 1949, of the second sentence of the quotation set forth in fn. 3. Its fundamental reasoning is applicable, however, the Taylor and Boisseau cases demonstrating that Congress had added that sentence only in an effort to clarify the meaning of the sentence preceding it. Moreover, the evidence does not show that the goods or services of appellant were for resale; and appellant's business was, without question, recognized in the industry as one of retail sales and services.

10. In the oral argument, however, appellee conceded that the Act would not apply to appellee provided the proof showed that appellant was a "retail or service establishment" within the meaning of the exemption claimed.

11. Cf. 29 U.S.C.A. § 203.

This whole phase of the problem before us was fully dealt with in the Boisseau case, supra. The Trial court [12] had held the Act to apply and denied a claimed exemption to an employer engaged in the business of printing or reproducing letters and advertising matter and mailing them in interstate commerce. This ruling was based upon its finding that all of the employees worked on goods destined for interstate transportation, and that Boisseau had adduced no evidence that such services or sales are regarded as retail in the industry.

We rejected these conclusions, and held Boisseau [218 F.2d 738] entitled to the exemption because his business must be "regarded as a segment of the overall group of local industrial and commercial establishments," and as belonging in "a general category of small, local establishments performing necessary services for local businesses of all types." We expressed the opinion "that the trial court placed too heavy a burden upon appellant," and that the employer had amply sustained the burden necessary to establish the exemption claimed, and we concluded with these words:

> "Since it is not questioned that all of appellant's services are rendered to customers located in Louisiana and that none of his services are for resale, it follows that the provisions of Section 13(a) (2) exempt appellant's employees from the minimum wage provisions of the Act."

We reach a like conclusion here, finding that, as a matter of law, appellant, operating this small interior decorating establishment, with four or five operatives and making substantially all of its sales at its place of business in Dallas and to customers in the State of Texas, was exempt from the provisions of the Fair Labor Standards Act. The judgment of the court below is reversed and judgment rendered here in favor of appellant.

Reversed and rendered.

---

12. Mitchell v. Boisseau, D.C., 118 F.Supp. 480.