**M. P. SAMS, Plaintiff,**

v.

**E. M. BECKWORTH and Archie Beaty, Individually, and d/b/a Hi-Way Auto Wrecking & Supply Company, Defendants.**

**Civ. A. No. 2372.**

United States District Court
E. D. Texas,
Tyler Division.
Feb. 6, 1958.

Amended and Supplemental Findings
of Fact March 4, 1958.

Ben Goodwin, Bill B. Lambert, Tyler, Tex., for plaintiff.

Truman Warren, Alex P. Pope, Tyler, Tex., for defendants.

SHEEHY, Chief Judge.

This case arises under the Fair Labor Standards Act of 1938 (Title 29 U.S.C.A. § 201 et seq.), hereinafter referred to as the Act.

■ At all times pertinent hereto the defendants owned and operated in Tyler, Texas, a business known as the Hi-Way Auto Wrecking & Supply Company, hereinafter referred to as the Wrecking Company. Plaintiff, a former employee of the defendants, instituted this suit under the Act seeking to recover alleged unpaid minimum and overtime wages, liquidated damages and attorneys fees.

The facts, as found, are as hereinafter stated.

The defendants in the operation of their Wrecking Company bought burned or wrecked automobiles and trucks for the purpose of stripping or removing therefrom all salable parts. In connection with this business the defendants maintained a place of business within the corporate limits of the City of Tyler, Texas, and a short distance from the corporate limits of the City of Tyler defendants owned a small tract of land adjacent to one of the highways leading into Tyler, on which tract of land they placed the burned and wrecked automobiles and trucks as they purchased same. This tract of land was nothing more than a storage yard and will hereinafter be referred to as the storage yard. After the purchased automobiles and trucks were placed on the storage yard the defendants would remove the salable parts from said automobiles and trucks, most of said parts being removed as the defendants had a sale therefor, and sell them to persons desiring to purchase such used parts. The purchasers of these used parts would use the parts in repairing automobiles and trucks. Although a number of the purchasers of such used parts used them in repairing their own motor vehicles, a number of the purchasers of said parts were garages and used car dealers. The garages would use the purchased parts in the repair of motor vehicles belonging to customers of the garage. The used car dealers who purchased such parts would use them in the repair of used motor vehicles that the used car dealers were offering for sale to the public. All of the sales of parts made by the defendants were made in Texas to either persons living in Texas or businesses located in Texas, with the overwhelming majority of the sales being made to either persons living in Tyler or businesses located in Tyler. There is no evidence that the defendants purchased any burned or wrecked automobiles or trucks outside the State of Texas. The gross sales of parts made by defendants averaged approximately $8,000 per month.

Generally, there were certain portions of each automobile or truck purchased by the defendants that were of no use as a motor vehicle part and could not be sold as such. From time to time and for the primary purpose of removing such from their storage yard in order to make room for other trucks and automobiles being purchased by defendants, the defendants would sell the remains of the wrecked or burned vehicles that could not be sold as used parts to scrap metal or junk dealers as scrap metal or junk. During the time pertinent hereto a substantial portion of such scrap metal or junk sold by defendants was sold to scrap or junk dealers located in Tyler who, in turn, sold a substantial amount of the scrap metal or junk handled by them to certain steel

companies and foundries in Texas. The steel companies and foundries purchasing such scrap metal or junk used same in the manufacture and processing of steel and steel products, and a substantial portion of such steel and steel products so manufactured and processed by said companies was sold and shipped in interstate commerce.

The defendants paid various sums, up to approximately $400, for the wrecked or burned motor vehicles purchased by them. The scrap metal or junk sold by the defendants to the scrap metal or junk dealers, as aforesaid, averaged $4. or $5. per motor vehicle. During the 17 month period here involved the sales of scrap metal or junk made by the defendants aggregated the sum of approximately $3,500 or an average of approximately $210 per month.

On August 1, 1955, the defendants employed the plaintiff as a watchman or caretaker, and plaintiff remained so employed until January 5, 1957. During that entire time plaintiff was paid at the rate of $25 per week, and it is for that time that plaintiff claims he is entitled to the minimum wages and overtime herein sued for. In addition to the $25 per week wages paid, the defendants furnished plaintiff a place to live on the storage yard and furnished certain services such as electricity and gas. Plaintiff was to live on the storage yard and had no duties to perform other than to watch the premises for thieves and for fire. Plaintiff testified that he worked an average of at least 60 hours a week during his employment with the defendants and considering that the plaintiff was working while watching the premises, which he undoubtedly was, there is no question but what he did work at least 60 hours per week.

The real question here presented is whether plaintiff came within the coverage of the Act. In my opinion, he did not.

An employee does not come within the Act unless his employer is engaged in interstate commerce or in the production of goods for interstate commerce. Clear-ly, the defendants were not engaged in interstate commerce. The business of the defendants was the selling of used motor vehicle parts. The primary purpose of the disposition of the scrap metal and junk made by the defendants was to rid their storage yard of an accumulation of debris and not to earn a profit. Such disposition of the scrap metal or junk was but a mere incident to the defendants' business. Plaintiff was employed as a watchman primarily for the protection of the parts the defendants were to sell and only incidentally, if at all, for the protection of the scrap metal residue.

Under the facts in this case I find and conclude that the defendants at all times pertinent hereto were not engaged in the production of goods for interstate commerce within the meaning of the Act, and that the plaintiff while employed by the defendants, as aforesaid, was not engaged in the production of goods for interstate commerce within the meaning of said Act.

Even if it should be concluded that the disposition by defendants of the scrap metal and junk in the manner above found was sufficient to place the defendants in "production of goods for commerce" the defendants' business was nothing more than a retail establishment within the meaning of 29 U.S.C.A. § 213, and that being true, defendants were exempt from the provisions of the Act requiring the payment of minimum wages and overtime. The last mentioned finding and conclusion finds ample support in Ben Kanowsky, Inc. v. Arnold, 250 F.2d 47, decided by the United States Court of Appeals for the Fifth Circuit on December 10, 1957, but not yet reported in the Federal Reporter, and the cases therein cited.

In view of the findings and conclusions, above, judgment will be entered to the effect that plaintiff take nothing and that all costs incurred herein be adjudged against the plaintiff.

This Memorandum Decision will constitute the Findings of Fact and Conclu-

sions of Law herein as authorized by Rule 52, Fed.Rules Civ.Proc. 28 U.S. C.A.

### Amended and Supplemental Findings of Fact

Came on for consideration plaintiff's Motion to Amend and Supplement the Findings of Fact heretofore made in this cause in the Memorandum Decision filed herein on February 6, 1958, as the Findings of Fact and Conclusions of Law in this cause, and the Court makes the following Finding of Fact as Supplemental Finding of Fact in addition to those made in referenced Memorandum Decision: "That if plaintiff were entitled to recover herein, he would be entitled to recover as unpaid minimum wages and overtime the sum of $2,712.50."

Except as to the extent herein granted as shown by the Supplemental Finding of Fact just made, plaintiff's Motion to Amend and Supplement Findings of Fact in this case is hereby overruled.