ARNOLD *v.* BEN KANOWSKY, INC.

No. 60.   Argued January 11, 1960.—Decided February 23, 1960.

Submitted on briefs by *Arthur J. Riggs* for petitioner and *G. H. Kelsoe, Jr.* for respondent.

*Bessie Margolin* argued the cause for the United States, as *amicus curiae. Solicitor General Rankin, Harold C. Nystrom, Bessie Margolin, Sylvia S. Ellison* and *Beate Bloch* were on a brief for the Secretary of Labor, as *amicus curiae,* urging reversal.

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

This case concerns the provisions of the Fair Labor Standards Act of 1938 exempting from wages-and-hours coverage certain retail sales and service establishments.[1] The suit was brought by petitioner individually under § 16 (b) of the Act for payment of overtime wages claimed under § 7. The Court of Appeals for the Fifth Circuit reversed a District Court judgment for petitioner[2] and we granted certiorari, 359 U. S. 983. The proceedings in this Court are *in forma pauperis.* Both sides submitted on

---

[1] 29 U. S. C. § 213 (a), 63 Stat. 917, § 13 (a).

"The provisions of sections 6 and 7 shall not apply with respect to . . . (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; . . . or (4) any employee employed by an establishment which qualifies as an exempt retail establishment under clause (2) of this subsection and is recognized as a retail establishment in the particular industry notwithstanding that such establishment makes or processes at the retail establishment the goods that it sells: *Provided,* That more than 85 per centum of such establishment's annual dollar volume of sales of goods so made or processed is made within the State in which the establishment is located; . . . ."

[2] The decision of the Court of Appeals is reported at 250 F. 2d 47. Denial of rehearing is reported at 252 F. 2d 787.

their briefs, and oral argument was heard only from the representative of the Secretary of Labor appearing as *amicus curiae*.

Respondent conducts an interior decorating and custom furniture business in Dallas, Texas. On the same premises he fabricates aircraft parts from phenolic, a cloth-impregnated phenol resin. This plastic is widely used in aircraft and automotive parts and can be machined on the woodworking equipment respondent has available in his furniture shop. Petitioner was employed by respondent from October 17, 1954, through September 2, 1955, primarily in the fabrication of phenolic parts.

At the trial, a representative of Chance Vought Aircraft, Inc., testified that his company purchased over $34,000 worth of phenolic parts from respondent in 1955, and that these parts were used in aircraft and missiles sold to the United States Navy. A representative of Temco Aircraft Company testified that it purchased about $2,000 worth of phenolic parts annually from Kanowsky for use in manufacturing aircraft subassemblies for the Air Force or for prime contractors, many of whom were located outside the State. Respondent also shipped a small amount of sheet phenolic directly outside the State.

During the year beginning October 1, 1954, respondent's sales totaled $99,117.52, and its sales of phenolic and phenolic parts were $39,751.71, or almost exactly 40% of its total sales. Its secretary-treasurer admitted that phenolic aircraft parts alone accounted for at least 25% of the company's total sales. Respondent introduced no evidence concerning the amount or nature of sales of phenolic in forms other than aircraft parts. Notwithstanding the admitted percentage of its total sales attributable to phenolic parts, respondent claimed exemption from the provisions of the Fair Labor Standards Act because of the retail character of its business.

The District Court found that petitioner was engaged in the production of goods for commerce within the meaning of the Act, and upon respondent's admission that petitioner had been paid for overtime hours only at straight time rates, entered judgment for petitioner for unpaid overtime compensation plus an attorney's fee. The Court of Appeals reversed on the ground that respondent was exempt from the Act's overtime requirements under § 13 (a)(2) as a "retail or service establishment."

We believe that the Court of Appeals was in error and must be reversed. The wording of the statute, the clear legislative history, and the decisions of this Court require this conclusion.

Petitioner admittedly is engaged in the manufacture of phenolic parts for commerce. That this activity may be considered a "sideline" from respondent's viewpoint does not remove petitioner from coverage under the Fair Labor Standards Act unless the respondent's activities fall within the specific exemptions enumerated in § 13 of the Act. As originally passed in 1938, the Fair Labor Standards Act exempted from coverage "any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce." [3] In 1949 Congress substituted a three-part definition for this provision. Any employee employed by a retail or service establishment is to be exempt if more than 50% of the establishment's annual dollar volume of sales is made within the State, if 75% of its annual sales volume is not for resale, and if 75% of its annual sales volume is recognized within the industry as retail sales.

This Court had occasion at the last Term to point out that the 1949 revision does not represent a general broad-

---

[3] 52 Stat. 1060, 1067.

ening of the exemptions contained in § 13.[4]    Rather, Congress "was acting in implementation of a specific and particularized purpose" to replace the unsatisfactory "business use" test, which had developed around the 1938 provision, with a formula that would be at once flexible and at the same time provide clear statutory guidance to the Administrator.[5]

We have held that these exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.[6] The three conditions of § 13 (a)(2) are explicit prerequisites to exemption, not merely suggested guidelines for judicial determination of the employer's status.[7]

While § 13 (a)(2) contains the requirements every retail establishment must satisfy to qualify for exemption, a retailer-manufacturer must satisfy the additional requirements of § 13 (a)(4) since it "makes or processes" the goods it sells.[8]

---

[4] *Mitchell* v. *Kentucky Finance Co.*, 359 U. S. 290, 294.

[5] *Id.*, at 293.  See also the statement made by Senator Holland, manager of the amendment, during the debate in the Senate, 95 Cong. Rec. 12491; and the remarks of Representative Lucas, who introduced the amendment in the House, 95 Cong. Rec. 11116.

[6] *Mitchell* v. *Kentucky Finance Co.*, 359 U. S. 290, 295.

[7] Such cases as *White Motor Co.* v. *Littleton*, 124 F. 2d 92 (C. A. 5th Cir. 1941), relied upon by the Fifth Circuit in its opinion in this case and decided at a time when there was no statutory definition of "retail or service establishment," no longer can have any vitality in view of the 1949 amendments.  The extent to which the *White Motor Co.* decision rests on the absence of a statutory definition of "retail" is shown in 124 F. 2d, at 93.

[8] Prior to the 1949 amendments to the Act, the whole area of manufacturing was excluded from the retail exemption.  It had been repeatedly held that establishments engaged to any extent in manufacturing or processing activities could not qualify for exemption under former § 13 (a)(2). *E. g.*, *Grant* v. *Bergdorf & Goodman Co.*, 172 F. 2d 109 (C. A. 2d Cir. 1949); *Fred Wolferman, Inc.*, v. *Gus-*

Turning to the facts of this case, it is clear that respondent, through its fabrication of phenolic parts, is "making or processing the goods that it sells." To gain exemption it therefore must comply with the criteria of § 13 (a)(2) as they are incorporated by reference in § 13 (a)(4), as well as the additional requirements of § 13 (a)(4) itself. It is clear that respondent does not meet at least two of the three standards of § 13 (a)(2) as included in § 13 (a)(4).

First, sales of phenolic parts account for more than 25% of the respondent's annual sales volume. The court below assumed that respondent's sales were recognized in the community as retail sales without any evidence to support the fact. This conclusion was not justified, since it is clear that Congress intended that "any employer who asserts that his establishment is exempt must assume the burden of proving that at least 75 percent of his sales are recognized in his industry as retail." [9]

---

*tafson,* 169 F. 2d 759 (C. A. 8th Cir. 1948); *Walling* v. *Goldblatt Bros.,* 152 F. 2d 475 (C. A. 7th Cir. 1945); *Walling* v. *American Stores Co.,* 133 F. 2d 840 (C. A. 3d Cir. 1943); *Davis* v. *Goodman Lumber Co.,* 133 F. 2d 52 (C. A. 4th Cir. 1943); *Collins* v. *Kidd Dairy & Ice Co.,* 132 F. 2d 79 (C. A. 5th Cir. 1942); see *Roland Electrical Co.* v. *Walling,* 326 U. S. 657, 666–678. The Administrator's interpretation comporting with this view is to be found in Interp. Bull. No. 6, as revised and reissued June 16, 1941, 1942 WH Manual 326.

The legislative history of the amendments, as reflected by statements of the sponsors and Committee Reports, clearly evidences that § 13 (a)(2) as amended "does not apply to any manufacturing activities since any such activities, when conducted by a retail establishment, if exempt, are intended to be exempt under section 13 (a)(4)." Statement of the House Conferees, 95 Cong. Rec. 14932; see also the statements on the floor of Congress by the managers for the amendment in each House, Senator Holland and Representatives Lesinski and Lucas, 95 Cong. Rec. 12495, 14942, 11216.

[9] Remarks of Senator Holland, 95 Cong. Rec. 12502; remarks of Representative Lucas, 95 Cong. Rec. 11004, 11116; see also the

Second, the Court of Appeals assumed that the sales of phenolic and phenolic parts were not for resale, but in doing so, it was in error. The sales of parts to one company alone for incorporation in airplanes and missiles that were to be sold to the United States Navy exceeded 25% of the total. These sales indisputably were made with the expectation that the parts would be incorporated in aircraft and that the aircraft would be sold. Such transactions are clearly within the concept of resale.[10]

Since respondent has not sustained its burden of proving that 75% of its annual sales volume is not for resale and is recognized as being retail in the particular industry, we need not reach the question whether the additional standards of § 13 (a)(4) itself are met.[11]

We hold that respondent has not satisfied the requirements of § 13 and is not entitled to exemption thereunder. The judgment of the Court of Appeals is reversed; the judgment of the District Court is reinstated; and the cause is remanded to that court for consideration of the prayer of petitioner for further counsel fees in accordance with the provision of the Act.

*It is so ordered.*

---

statement of the majority of the Senate Conferees, 95 Cong. Rec. 14877.

[10] See statement of the House Conferees, 95 Cong. Rec. 14932; statement of majority of Senate Conferees, 95 Cong. Rec. 14877; 29 CFR § 779.15 (c) (Supp. 1959); cf. *Mitchell* v. *Sherry Corine Corp.,* 264 F. 2d 831, 834 (C. A. 4th Cir. 1959). As the cited legislative materials indicate, the exemption from the general "resale" rule for residence and farm construction repair and maintenance under § 3 (n), 29 U. S. C. § 203 (n), evinces an intent to classify other sales for use in articles to be sold as "resale."

[11] The employee having shown that the nature of his employment brings him within the coverage of the Act, the nature of the "establishment" in which he is employed will be drawn into litigation only if the employer seeks an exemption under § 13, in which event the burden of proving the nature of the establishment is on the employer.

MR. JUSTICE WHITTAKER, dissenting.

Section 13 (a) of the Fair Labor Standards Act exempts from the wage-and-hour provisions of that Act employees of "any retail or service establishment," as there defined. See note 1 of the Court's opinion. Therefore, the entity to be considered is the "establishment." A single employer may conduct two (or more) "establishments," side by side or even under the same roof, one of which could be a "retail or service establishment," as defined in and exempted by § 13 (a), and the other not. Here, respondent appears to have been separately engaged in three activities: (1) the manufacture and sale of phenolic, in which enterprise several persons—the number is not stated in the record—were employed, (2) an interior decorating business, commonly employing five persons, and (3) the custom manufacture and sale of furniture, employing a small, but varying, number of employees. During petitioner's employment by respondent—from October 17, 1954, through September 2, 1955—he worked for a period in one of these enterprises and then in another, but, as the Court says, he worked primarily in the fabrication of phenolic parts.* Upon respondent's admis-

---

*The witness Kanowsky testified:

"Q. To your knowledge, were there a number of weeks that he didn't do any work on phenolic aircraft parts at all?

"A. There had to be, yes, sir.

"Q. To your knowledge, were there a number of weeks in which he did seventy-five percent or more of his work on furniture and things of that nature?

"A. Yes, sir."

The witness Justice, employed primarily in the interior decorating establishment, testified:

"Q. . . . . How about when they were doing this [interior decorating] job down town?

"A. I believe he worked down town practically all of the time.

sion at the trial, that petitioner had been paid for over-time hours worked *only at straight time rates*, the District Court, without any evidence showing the number of hours worked in the one as distinguished from the other of these enterprises, entered judgment for petitioner for overtime compensation for *all* overtime hours worked by petitioner, and an attorney's fee.

Although, as the Court correctly says, respondent, in its phenolic enterprise, was engaged in the production of goods for commerce and a major part of that production was sold for resale and, hence, that enterprise was not a "retail or service establishment," as defined in § 13 (a), it appears that all of respondent's interior decorating services were rendered locally, and that all of the custom furniture manufacturing was done and the furniture sold locally and not for resale. And, therefore, it would appear—at least there is room for a finding—that respondent's interior decorating and custom furniture manufacturing and selling enterprises were "retail or service establishments," as defined in § 13 (a). But, there is no finding by the District Court that these three enterprises were conducted by respondent in three "establishments" or in only one "establishment"; nor is there any finding as to what percentage of the interior decorating services were rendered locally, or what percentage of the custom furniture manufacturing and selling was done locally and not for resale.

Only if respondent's three enterprises constituted one "establishment" would there be support in the record for the judgment; and, as stated, there is no finding to that effect. The only oral argument made here was by counsel for the Department of Labor, as *amicus curiae.* Its posi-

---

"Q. Were there weeks at a time that you know of that seventy-five percent of his work was done on furniture and stuff like that and the balance on phenolics?

"A. Yes, sir."

tion is that, as a matter of law, respondent operated no more than two "establishments"; that the phenolic enterprise might be one "establishment," and it clearly was not a "retail or service establishment" as defined in § 13 (a) (I agree that this is so); that the interior decorating and custom furniture manufacturing and sales enterprises might be another "establishment"—why these two enterprises might not be two "establishments" was not explicated. Its counsel then argues that, because some custom manufacturing of furniture was done in the latter "establishment," it could not, as a matter of law, be a "retail or service establishment" as defined in § 13 (a). That argument would have had some force prior to the 1949 amendment to § 13 (a) (63 Stat. 917), but it is in the teeth of that amendment, as clause 4 of the section, as then amended, provides that the wage-and-hour provisions (§§ 6 and 7) of the Act do not apply with respect to a "retail or service establishment" as defined *"notwithstanding that such establishment makes or processes at the retail establishment the goods that it sells . . . ."* (Emphasis added.) In the absence, as here, of essential evidence (showing the overtime hours worked in each of the several "establishments"—if more than one) and findings, I think the record does not support the judgment nor disclose the matters requisite to a decision of the question sought to be presented. I would, therefore, dismiss the writ as improvidently granted, or, at the very least, remand the case to the District Court for a new trial and for proper findings of fact on the determinative issues.