**Harold WILLIAMS, d/b/a Williams Moving Company, Appellant,**

v.

**UNITED STATES DEPARTMENT OF LABOR and Secretary of Labor, United States Department of Labor, Appellees.**

No. 82–1292.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1982.

Decided Jan. 19, 1983.

Rehearing and Rehearing En Banc Denied Feb. 15, 1983.

T. Timothy Ryan, Jr., Sol. of Labor, Beate Bloch, Associate Sol., Gail V. Coleman, Laurie E. Rucoba, Attorneys, U.S. Dept. of Labor, Washington, D.C., Tedrick A. Housh, Jr., Regional Sol., Kansas City, Mo., for appellees.

Fordyce & Mayne, P.C., Frederick M. Switzer, III, Mary Webster Murphy, St. Louis, Mo., for appellant.

Before HEANEY and ROSS, Circuit Judges, and HENLEY, Senior Circuit Judge.

ROSS, Circuit Judge.

This is an appeal by Harold Williams from the district court's[1] affirmance of an administrative finding by the Department of Labor that Williams violated the Service Contract Act. 41 U.S.C. §§ 351–358 (1982). For reasons stated herein, we affirm in part and reverse in part and remand to the district court, 533 F.Supp. 98, for further proceedings consistent with this opinion.

Williams is engaged in the moving and storage business and has his principal place of business in Dexter, Missouri. He is a licensed motor carrier in interstate and intrastate commerce and holds a certificate of public convenience and necessity issued by the Interstate Commerce Commission and the requisite certificates and permits to operate as a carrier in Missouri and Illinois.

The Department of Air Force awarded Williams contracts for 1975 and 1976 which required Williams "to furnish services and materials for the preparation of personal property (including servicing of appliances) for movement or storage, drayage and related services for military personnel." These contracts are commonly referred to as "Pack and Crate Contracts." Williams' duty was to move household items that a family would need immediately upon arrival at its destination. Long-haul movers, generally, obtained the contracts to move the bulk of a family's belongings.

The Secretary of Labor issued an administrative complaint alleging Williams violated the Service Contract Act by failing to pay his employees prevailing wage rates. Williams asserted that he was exempt from the provisions of the Act by reason of 41 U.S.C. § 356(3) (1982) which exempts "[a]ny contract for the carriage of freight * * * by truck * * * where published tariff rates are in effect." The Department of Labor administrative law judge determined that Williams had violated the Act and had underpaid his employees by $22,154.66. The ALJ concluded that the contracts were "primarily for packing and unpacking and related services and [were] not primarily for the carriage of freight" within the meaning of section 356(3).

Williams filed exceptions to the ALJ's order and the Assistant Secretary of the Employment Standards Administration affirmed the ALJ's findings. Williams then filed this action in district court. After a review of the record, the district court upheld the administrative determination that Williams was not exempt from the wage provisions of the Act. The court stated that the "intent of the contracts ware [sic] to provide Scott Air Force Base with packing and crating of household goods for the relocation of military personnel" and that "[s]ince most of the transportation of these goods is executed by other movers, who do the long distance hauling, the above contracts are not for carriage but rather for packing and crating."

The initial question on appeal is whether the district court erred in finding that Williams was not exempt under section 356(3).

---

1. The Honorable H. Kenneth Wangelin, Chief Judge, United States District Court for the Eastern District of Missouri.

Williams asserts that the contracts in substance provide for the "carriage of freight" and entitle him to the exemption. The government does not dispute that the contracts provided for services other than packing and crating but argues that Williams failed to prove that the contracts were *primarily* for the carriage of freight. The second issue on appeal is whether the wage determinations issued by the Secretary of Labor properly relate to the counties in which the work was performed.

*Carriage of Freight*

41 U.S.C. § 351 provides that contracts with the United States must specify that minimum wages will be paid as determined by the Secretary "in accordance with prevailing rates for such employees in the locality." 41 U.S.C. § 351(a)(1) (1982). However, section 356(3) provides an exception for "any contract for the carriage of freight * * * by truck * * * where published tariff rates are in effect." Williams contends that the exemption is applicable to the 1975 and 1976 contracts. The ALJ held that although published tariff rates were in effect,[2] the contracts were not for the carriage of freight.

■ First, exemptions from remedial legislation such as the Service Contract Act should be narrowly construed against the party asserting the applicability of the exemption. *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Phillips Co. v. Walling,* 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945). Second, our scope of judicial review is governed by 41 U.S.C. § 353(a) which incorporates 41 U.S.C. § 39 (1965) and provides that findings of fact shall be conclusive if supported by a preponderance of the evidence. *Midwest Maintenance & Const. Co. v. Vela,* 621 F.2d 1046, 1048 (10th Cir.1980). Mindful of the narrow standard of review in this case we proceed to address the issue.

■ The legal status of the contracts does not depend solely on technical factors such as the amount of time Williams spent on various duties under the contract. Instead, we must look to the broader transactional setting and the economic reality of these contracts. *See Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 1476, 91 L.Ed. 1772 (1947).

■ The ALJ found that the bulk of the household moving was done by long-haul movers and that the pack and crate contracts were auxiliary to those moving contracts. Thus, although Williams did spend some time hauling household goods, the major duty performed under his contracts was the handling of personal belongings. The ALJ also determined that Williams' evidence purporting to show that from 70 to 85% of the time required to render services under the contracts was spent in transportation was misleading. These figures failed to take into account the fact that many of the deliveries were consolidated, thus, decreasing the amount of travel time per shipment. The ALJ also found significant from the standpoint of economic reality the fact that compensation for the shipments was not based on distance traveled. The differences in prices depended on whether the shipment was inbound to or outbound from a military base and whether the shipment contained household goods or unaccompanied baggage. But prices did not vary according to the amount of transportation required.

The foregoing factors do tend to indicate that the contracts were not primarily for

---

**2.** Williams asserts that published tariff rates were in effect for the services performed under the contracts and that in order to perform the contracts for the government at reduced rates he was required to file and did file a copy of these schedules with the Interstate Commerce Commission pursuant to 49 U.S.C. § 22. The Secretary argues that 29 C.F.R. § 4.117 provides that a contract is not subject to published rates "unless the service contracted for is *actu-* *ally* governed by published tariff rates in effect." (Emphasis added.) The Secretary contends the contracts were awarded to Williams as low bidder in a competitive bidding situation and were subject to the "Schedule of Services and Prices" contained in the contract. Because the district court did not directly address this issue and because of our determination that the contracts are not for carriage of freight, we need not address this issue.

carriage of freight as governed by section 356(3). We cannot say that the ALJ's holding was unsupported by the preponderance of the evidence. We hold that Williams was not exempt under section 356(3) and that he is liable for underpayment of wages under the Service Contract Act.

*Wage Determinations*

Williams contends that even if the exemption is not applicable to his contracts, he is not liable because the Secretary's wage determinations were improper as applied to him. He argues that the locality to which the Act refers is the locality where the work is performed and not the locality where the government facility is located. Williams contends that the Secretary's wage determinations were erroneously made for the county in which the Air Force base was located and not for the counties in which the work was performed.

The government admitted that the decisions in *Descomp, Inc. v. Sampson,* 377 F.Supp. 254 (D.Del.1974) and *Southern Packing and Storage Co. v. United States,* 458 F.Supp. 726 (D.S.C.1978) are controlling and require the wage determination to be made for the locality in which the services were performed. The government has since ceased its practice of issuing wage determinations for the locality of the government facility procuring the services. Thus, only deliveries which originated or terminated within the counties listed in the wage determinations would be subject to those determinations. It is undisputed that in 1975 no work was performed which originated or terminated in the two counties included in the wage determinations. The government concedes that the finding of liability for underpayment of wages in 1975 was erroneous. Additionally, it is unclear from the record exactly how much of Williams' services in 1976 were performed in the localities covered by the wage determinations. For this reason we remand to the district court for a determination of the amount of wages due employees under the

contracts and so that the court may order a release of the monies previously withheld.[3]

Affirmed in part, reversed in part and remanded with direction to the district court for further proceedings consistent with the views expressed in this opinion.

---

3. The amount of the 1975 and 1976 underpayments was withheld by the government from contract payments due Williams.