**Brian BENOIT, et al., Plaintiffs**

v.

**TRI–WIRE ENGINEERING SOLUTIONS, INC., Defendant.**

**Civil Action No. 07–30237–KPN.**

United States District Court, D. Massachusetts.

April 24, 2009.

Jeffrey S. Morneau, Donohue, Hyland & Donohue, PC, Holyoke, MA, for Plaintiffs.

Christa C. Von Der Luft, Nutter, McClennen & Fish, Boston, MA.

Sarah P. Kelly, Nutter, McClennen & Fish, LLP, Boston, MA, for Defendant.

*MEMORANDUM AND ORDER WITH REGARD TO CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT (Document Nos. 45 and 53)*

NEIMAN, United States Magistrate Judge.

Brian Benoit, individually and on behalf of a preliminarily-certified class of technicians (together "Plaintiffs"), brings this action against Tri–Wire Engineering Solutions, Inc. ("Defendant") for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Pursuant to Fed. R.Civ.P. 56, the parties have filed cross-motions for partial summary judgment on the issue of the applicability of the Motor Carrier Act ("MCA") exemption as a defense to Plaintiffs' complaint which seeks to recover unpaid overtime from August 10, 2005, to the present.

The parties have consented to the jurisdiction of this court. *See* 28 U.S.C. § 636(c); Fed.R.Civ.P. 73. For the reasons set forth below, Plaintiffs' motion for partial summary judgment will be allowed while Defendant's cross-motion will be denied.

### I. BACKGROUND

The parties acknowledge that the question before the court is purely one of law. Accordingly, the following agreed-upon facts are taken directly from Plaintiffs' Statement of Undisputed Facts (Document No. 47, hereinafter "Pls.' Facts").

Plaintiffs worked as technicians for Defendant at various times since August 10, 2005. (Pls.' Facts ¶ 1.) During their em-

ployment, Plaintiffs installed and activated telephone, data, and broadband equipment. (*Id.* ¶ 2.) To accomplish those tasks, they drove "light-weight" vehicles, *i.e.*, those weighing 10,000 pounds or less. (*Id.* ¶ 3.)

Benoit filed the instant complaint on December 11, 2007, and since then at least 125 additional technicians have filed consent-to-sue forms. On or about June 5, 2008, the court granted Plaintiffs' motion for preliminary recognition of this case as a FLSA collective action and established a discovery schedule. Coincidentally, on the very next day, June 6, 2008, the FLSA was amended in a manner potentially applicable here, *i.e.*, it called into question whether a long-standing overtime exemption for employers of light-weight vehicle drivers—the MCA exemption—should retroactively apply to August 10, 2005. Accordingly, on October 15, 2008, the court entered a new scheduling order which allowed the parties to file cross-motions for partial summary judgment addressing that issue. The motions were filed and the court heard oral argument on March 26, 2009.

## II. Standard of Review

"Summary judgment is warranted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Uncle Henry's v. Plaut Consulting Co., Inc., Inc.,* 399 F.3d 33, 41 (1st Cir.2005) (quoting Fed. R. Civ. Pro. 56(c)). "An issue is 'genuine' for purposes of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a 'material fact' is one which might affect the outcome of the suit under the governing law." *Carcieri v. Norton,* 398 F.3d 22, 29 (1st Cir.2005) (citations and further internal quotation marks omitted).

The mere fact that both parties move for summary judgment does not change the foregoing analysis, *i.e.*, the court normally "consider[s] each motion separately, drawing inferences against each movant in turn." *United Paperworkers Int'l Union Local 14 v. Int'l Paper Co.,* 64 F.3d 28, 32 n. 2 (1st Cir.1995) (citations and internal quotation marks omitted). Here, however, the parties have agreed that the relevant issue is purely one of law. Thus, they have jointly indicated their willingness to have the court decide this legal question via their cross-motions.

## III. Discussion

■ Broadly speaking, the issue here is whether the MCA exemption to the FLSA overtime requirement is applicable for the period from August 10, 2005, through June 6, 2008. Defendant asserts that the exemption applied during that period, while Plaintiffs argue that it did not. Since several evolving statutory provisions underlie this issue, the court will first trace that evolution and then analyze the parties' respective arguments. In the end, the court will conclude that Plaintiffs have the stronger argument.

### A. The Legal Evolution

The FLSA has long provided that many employees are entitled to overtime pay for hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1). Employees who are subject to the Secretary of Transportation's ("Secretary") jurisdiction, however, have historically *not* been entitled to such overtime pay. *Id.* § 213(b) ("The provisions of section 207 of this title shall not apply with respect to—(1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49."). The scope of the

Secretary's jurisdiction is outlined in the MCA.

In pertinent part, the MCA provides that "[t]he Secretary of Transportation may prescribe requirements for ... a *motor carrier.*" 49 U.S.C. § 31502(b) (emphasis added). Prior to August 10, 2005, a "motor carrier" was defined as a "person providing *motor vehicle* transportation for compensation." ICC Termination Act of 1995, Pub.L. No. 104–88, § 103, 109 Stat. 803, 855 (1995) (emphasis added). In turn, a "motor vehicle" was, and still is, defined as a "vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway in transportation." *Id.* at 856; 49 U.S.C. § 13102(16). The combined effect of these provisions—*i.e.,* "the MCA exemption"—was that most employees who transported property in interstate commerce were not entitled to overtime pay.

On August 10, 2005, however, Congress passed the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (hereinafter "the SAFETEA–LU"). Pub.L. No. 109–59, 119 Stat. 1747 (2005). Among other things, the SAFETEA–LU narrowed the definition of a "motor carrier" to include only "person[s] providing *commercial* motor vehicle (as defined in section 31132) transportation for compensation." 49 U.S.C. § 13102(14) (emphasis added). In turn, the "commercial motor vehicle" definition required that the vehicle have "a gross vehicle weight rating or gross vehicle weight of *at least 10,001 pounds,* whichever is greater." 49 U.S.C. 31132(1) (emphasis added). The practical effect of this amendment—*i.e.,* the narrowing of the MCA exemption to

include only operators of motor vehicles weighing more than 10,000 pounds—was that qualified employees who operated light-weight vehicles were entitled, apparently for the first time, to overtime pay under the FLSA.

On June 6, 2008, however, the SAFE-TEA–LU Technical Corrections Act of 2008 (hereinafter the "TCA") was enacted. Pub.L. No. 110–244, 122 Stat. 1572 (2008). Among other things, the TCA, in section 305, re-amended the definition of "motor carrier" by striking the word "commercial" and, hence, restoring the definition to its pre-SAFETEA-LU state. *Id.* § 305(c), 122 Stat. at 1620. The effective date of this part of the TCA, however, is a bit unclear. Accordingly, the court focuses its analysis on the question of whether section 305 applies retroactively to August 10, 2005.[1]

B. *EFFECTIVE DATE ANALYSIS*

There are two subsections of section 121 of the TCA which illuminate the instant quandary concerning its effective date. In pertinent part, those subsections provide as follows:

(a) IN GENERAL.—Except as otherwise provided in this Act (including subsection (b)), this Act and the amendments made by this Act take effect on the date of enactment of this Act.

EXCEPTION.—(1) IN GENERAL.— The amendments made by this Act (other than the amendments made by sections 101(g), 101(m)(1)(H), 103, 105, 109, and 201(*o*)) to the [SAFETEA–LU] shall (A) take effect as of the date of enactment of that Act; and (B) be treat-

---

1. The court notes that it is concerned only with the approximate three-year period between August 10, 2005, and June 6, 2008. Defendant concedes that "after June 6, 2008, employees working with vehicles weighing less than 10,001 pounds will be subject to the

FLSA's overtime requirements, notwithstanding the authority of the Secretary of Transportation to also regulate their hours of service." (Def.'s Opp'n to Pls.' Motion Summ. J. and Cross–Motion Summ. J. at 2 n. 1.)

ed as being included in that Act as of that date. (2) EFFECT OF AMEND-MENTS.—Each provision of the [SAF-ETEA–LU] (including amendments made by that Act) (as in effect on the day before the date of enactment of this Act) that is amended by this Act (other than sections 101(g), 101(m)(1)(H), 103, 105, 109, and 201(*o* )) shall be treated as not being enacted.

Pub.L. No. 110–244, § 121, 122 Stat. 1572, 1608 (2008). "Stated differently, the general rule [—described in subsection (a)—] is that the amendments take effect on June 6, 2008, the date Congress enacted the [TCA]." *Vidinliev v. Carey Int'l, Inc.,* 581 F.Supp.2d 1281, 1289 (N.D.Ga.2008). "But the exception [—described in subsection (b)—] is that if a provision is an amendment to the SAFETEA–LU, then it takes effect on August 10, 2005, the date Congress enacted the SAFETEA–LU. The amended language from the SAFE-TEA–LU is treated like it never existed." *Id.*

In the main, Defendant argues that section 305 of the TCA is an amendment "to the SAFETEA–LU" and that, according to subsection (b) of section 121, it should apply retroactively beginning August 10, 2005. As Plaintiffs argue, however, a close look at the text of section 305 reveals that it is not an amendment to the SAFETEA–LU. Rather, it is an amendment to a portion the United States Code that was created by the ICC Termination Act of 1995. *See generally Vidinliev,* 581 F.Supp.2d at 1288–90.

Here is the actual relevant text of section 305:

(a) GENERAL REQUIREMENTS.— Section 31138 of title 49, United States Code, is amended—

. . . .

(c) DEFINITIONS RELATING TO MOTOR CARRIERS.—Paragraphs (6)(B), (7)(B), (14), and (15) of section 13102 of [title 49, United States Code] are each amended by striking "commercial motor vehicle (as defined in section 31132)" and inserting "motor vehicle."

*Id.* at § 305(c), 122 Stat. at 1620. As the *Vidinliev* court pointed out, "[t]he phrase 'section 13102 of such title' refers to 49 U.S.C. § 13102 and that section of the code was created by the ICC Termination Act of 1995." *Id.,* 581 F.Supp.2d at 1289. "Therefore," the court continued—in language echoed by virtually every other district court that has addressed the issue— "§ 305 of the [TCA] is an amendment to the ICC Termination Act, which in ̇turn affects the scope of the [MCA]. It is not, as Defendant assumes, an amendment to the SAFETEA–LU." *Id.* at 1290. *See also Tews v. Renzenberger, Inc.,* 592 F.Supp.2d 1331, 1347 (D.Kan.2009) ("The Court cannot conclude that Congress, by virtue of the language in § 121 of the [TCA], clearly and unambiguously intended for § 305 to apply retroactively."); *Loyd v. Ace Logistics, LLC,* 2008 WL 5211022, at *8 (W.D.Mo. Dec. 12, 2008) (following *Vidinliev* to hold that "Congress did not consider section 305 as an amendment to SAFETEA–LU"). *See also Villegas v. Dependable Construction Services, Inc.,* 2008 WL 5137321, at *21 n. 9 (S.D.Tex. Dec. 8, 2008) ("It is not clear that § 305 was intended to amend the SAFETEA–LU; rather, it may have amended the underlying [MCA]."); *Veliz v. Cintas Corp.,* 2008 WL 4911238, at *8 n. 6 (N.D.Cal. Nov. 13, 2008) (noting that since the "ICC Termination Act . . . created Section 13102," "[i]t is an open question whether Section 305 of the [TCA] actually is an amendment to the SAFETEA–LU").

The court finds further support for this reading of sections 121 and 305 in section 306 of the TCA. Subsection (b) of *that* section includes a one-year "safe harbor" provision for innocent employers of cov-

ered employees, beginning on August 10, 2005:

> (b) LIABILITY LIMITATION FOLLOWING SAFETEA–LU.—(1) LIMITATION ON LIABILITY.—An employer shall not be liable for a violation of section 7 of the [FLSA] (29 U.S.C. § 207) with respect to a covered employee if—(A) the violation occurred in the 1–year period beginning August 10, 2005; and (B) as of the date of the violation, the employer did not have actual knowledge that the employer was subject to the requirements of such section with respect to the covered employee.

*Id.* § 306(b), 122 Stat. at 1572. Subsection (c), in turn, defines a "covered employee," in pertinent part, as an employee "who performs duties on motor vehicles weighing 10,000 pounds or less." *Id.* § 306(c). "The net effect of subsections (b) and (c) is that an innocent employer has a one-year defense against claims for overtime pay brought by employees whose work involves [light weight] motor vehicles." *Vidinliev,* 581 F.Supp.2d at 1291. (Presumably, Defendant will invoke the one-year safe harbor provision here so as to minimize its liability.)

Perhaps more importantly for purposes of statutory construction, the court agrees with the following point made in *Vidinliev:* "If the definition of motor carrier in section 305 applies retroactively, then the one-year defense in section 306 is nothing more than surplusage." *Id.* Or, put another way, "applying section 305 retroactively would violate the rule that a statute should be 'interpreted so that no words shall be discarded as meaningless, redundant, or mere surplusage.'" *Id.* (quoting *United States v. Canals–Jimenez,* 943 F.2d 1284, 1286 (11th Cir.1991)). *See also Wood v. Spencer,* 487 F.3d 1, 7 (1st Cir.2007) ("It is common ground that all words and provisions of statutes are intended to have meaning and are to be given effect.") (cita-

tion, alteration and internal quotation marks omitted). Other courts have come to this very conclusion, *i.e.,* "to suggest that the court interpret § 121 in a way that renders the safe harbor in § 306 a nullity is at odds with basic rules of statutory construction." *Tews,* 592 F.Supp.2d at 1349 n. 8 (citing *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985)). *See, e.g., Villegas,* 2008 WL 5137321, at *21 n. 9 ("As this Court must presume that [all the] words of statutes are intended to have meaning, the Court will conclude that § 305 does not apply retroactively, and § 306 provides a one-year defense to liability."); *Veliz,* 2008 WL 4911238, at *6 ("For the one-year defense in Section [306(c) ] to have any relevance, Section 305(b) cannot apply retroactively."). *See also Hernandez v. Brink's, Inc.,* 2009 WL 113406, at *7 (S.D.Fla. Jan. 15, 2009) (adopting reasoning of *Vidinliev* ); *Loyd,* 2008 WL 5211022, at *8 (following reasoning of both *Vidinliev* and *Veliz* ); *Horn v. Digital Cable & Communications, Inc.,* No. 1:06 CV 325, slip op. at 8–10 (N.D.Ohio Nov. 18, 2008) (following *Vidinliev* to hold that "Section 306 of the [TCA] undermines retroactivity finding"). And the Supreme Court recently reiterated, "one of the most basic interpretive canons [is] that 'a statute should be construed so that effect is given to all of its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Corley v. United States,* —— U.S. ——, 129 S.Ct. 1558, 1566, 173 L.Ed.2d 443 (2009) (quoting *Hibbs v. Winn,* 542 U.S. 88, 101, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004)). In this court's view as well, Plaintiffs' section 306 surplusage argument cinches the result in their favor.

■ The court adds one final point. Whenever a statute claims to attach new legal consequences to events completed be-

fore its enactment, the "traditional presumption" is that the statute "does not govern absent clear congressional intent favoring such a result." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). *See also Lindh v. Murphy*, 521 U.S. 320, 328 n. 4, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) ("[C]ases where [the Supreme Court] has found truly 'retroactive' effect ... have involved statutory language that was so clear that it could sustain only one interpretation."). Moreover, "[t]he presumption against retroactivity is reinforced in this case by the principle that exemptions to the [FLSA] are 'narrowly construed against the employers seeking to assert them.'" *Vidinliev*, 581 F.Supp.2d at 1289 (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960)). Accordingly, even if Congress wanted section 305 of the TCA to apply retroactively, it failed to demonstrate that intent in clear and unambiguous terms. *See id.* As a result, the court has no choice but to rule for Plaintiffs here.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is ALLOWED and Defendant's cross-motion for partial summary judgment is DENIED.

IT IS SO ORDERED.