CONCURRING IN PART AND DISSENTING IN PART KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part. I agree with the court that Plaintiffs’ sales duties fall outside of the administrative exemption, but I disagree that their matchmaking duties fall within the exemption. To fall within the administrative exemption, an employee’s primary duties must “include the exercise of discretion and independent judgment with respect to matters of significance.” 29 C.F.R. § 541.202(a). “The phrase ‘discretion and independent judgment’ must be applied in the light of all the facts involved in the particular employment situation in which the question arises.” 29 C.F.R. § 541.202(b). Mindful that exemptions to the Fair Labor Standards Act “are to be narrowly construed against the employers seeking to assert them,” Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); see also Auer v. Robbins, 519 U.S. 452, 462, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), this court must consider several “[factors ... when determining whether an employee exercises discretion and independent judgment with respect to matters of significance,” 29 C.F.R. § 541.202(b). “Federal courts generally find that employees who meet at least two or three of these factors are exercising discretion and independent judgment, although a case-by-case analysis is required.” 69 Fed. Reg. 22122, 22143 (Apr. 23, 2004). The three factors most relevant to Plaintiffs’ duties at Randstad, and most likely to bring their matchmaking duties within the administrative exemption, are “whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices”; “whether the employee has authority to waive or deviate from established policies and procedures without pri- or approval”; and “whether the employee provides consultation or expert advice to management.” 29 C.F.R. § 541.202(b). Analyzing these three factors, I conclude that Plaintiffs’ matchmaking duties do not fall within the administrative exemption. First, none of the Plaintiffs in this case had the authority to “formulate” or even “interpret” or “implement” Randstad’s policies. Id. Randstad constrained employees’ discretion by establishing a points system requiring them to complete certain tasks to earn 100 points per week. R. 67-6 (Perry Dep. at 270) (Page ID #1550). Rand-stad further constrained employees’ schedules by holding “contests” that required them to perform specific tasks at specific times. Id. 271 (Page ID #1550); R. 67-7 (Lane Dep. at 92) (Page ID #1571). This rigid points system meant that Plaintiffs performed company-assigned matchmaking tasks each week, rather than deciding on their own how to find candidates and place them in appropriate jobs. Beyond lacking authority to decide which tasks would help them achieve Randstad’s matchmaking goals, or flexibility as to when to perform their assigned tasks, Plaintiffs also lacked discretion over how to perform their assigned tasks'. Randstad had specific requirements for job descriptions, and an outline that, employees had to follow when interviewing candidates. R. 67-6 (Perry Dep. at 129, 144-45) (Page ID #1531, 1535); R. 67-2 (Dooling Dep. at 117-18) (Page ID #1473-74). When screening candidates, Plaintiffs selected which candidates to interview based on preset criteria, rather than their own assessment of whether the candidate was a good fit for a particular position. R. 67-2 (Dooling Dep. at 132-33) (Page ID #1476); but see R. 67-6 (Perry Dep. at 143, 152) (Page ID #1535-36) (explaining that she exercised some judgment in deciding who to bring in for an interview, although the decisions were based on predetermined criteria). Randstad also' established a precise timeline for checking on new hires to see how they were doing at their placements. R. 67-6 (Perry Dep. at 158-59) (Page ID #1538); R. 67-7 (Lane Dep. at 149)' (Page ID #1576). Plaintiffs did not interpret or implement, let alone formulate, Randstad policies; they followed specific rules that they did not help create. Second, Plaintiffs did not have the authority to deviate from established policies without prior approval. For example, Randstad had a standard billing rate of 60%. R. 67-6 (Perry Dep. at 119) (Page ID #1529). Plaintiffs could not agree 'to chargé under 60% without prior approval from their supervisors. Explaining the process of setting the billing rate, Perry made clear that the rate “wasn’t up to [her].” Id. at 122 (Page ID #1530). Plaintiffs did not have the authority to deviate from other Randstad policies, either. Third, with one exception, Plaintiffs did not provide advice to management. Rand-stad gave Plaintiffs formulas for how to advertise job openings, interview candidates, set a client’s billing rate, and follow up after making a placement. Plaintiffs did not give management advice or suggestions about these formulas, but simply followed them. The exception is Lane’s time as an Assistant Branch Manager; in that capacity, Lane could “make recommendations regarding the hiring and firing of employees at [her] branch” that would be “very well considered.” R. 67-7 (Lane Dep. at 74) (Page ID #1567). But even when Lane was an Assistant Branch Manager, she did not have full authority to hire and fire. And as an Assistant Branch Manager, Lane still lacked discretion over decisions like the billing rate, and was still subject to the 100-point system that told her how to allocate her time. Id. at 82, 110 (Page ID #1569, 1575). Plaintiffs largely did not advise management, and none of them had any input about the policies, formulas, or procedures they were required to follow. Considering these three factors as well as the other enumerated factors that determine whether an employee exercises discretion and independent judgment, see 29 C.F.R. § 541.202(b), I conclude that Plaintiffs’ matchmaking duties fall outside the administrative exemption. The. Department of Labor’s Wage and Hour. Division (WHD) letter about Staffing Managers further convinces me that Plaintiffs’ matchmaking duties do not fall within the administrative exemption. See U.S. Dep’t of Labor, Wage & Hour Div., Opinion Letter, 2005 WL 3308616, at *1 (Oct. 25, 2005) [hereinafter WHD Letter]. In concluding that certain Staffing Managers fall within the administrative exemption, the WHD Letter notes that the Staffing Managers discussed in the letter “work under very little supervision” and “make decisions and accomplish their tasks without prior approval.” Id. By contrast, Plaintiffs worked within a 100-point system that told them which tasks to perform in a given week, from the number of phone calls to make to the number of candidates to place in jobs. R. 67-6 (Perry Dep. at 66) (Page ID #1518). . The Staffing Managers discussed in the letter “continue[d] to supervise the services of the employee” “[o]nce the employee [was] placed” with a client, and they had “full authority to discipline, fire, promote and assign to various tasks the employees they supervise.” WHD Letter at *1. Here, however, although Plaintiffs communicated with companies' and employees after making a placement, they did not supervise the employees. They were intermediaries between companies and new employees, rather than supervisors. R, 67-6 (Perry Dep. at 160-61) (Page ID #1538). The Staffing Managers discussed in the letter “decide[d] if advertising for the position is needed to find certain candidates” and “negotiate[d] the costs of such placement.” WHD Letter at *1. Here, however, Plaintiffs advertised for jobs at predetermined websites that they accessed through Randstad’s portal. R. 67-6 (Perry Dep. at 132-34) (Page ID #1532-33). Moreover, the letter specifically distinguishes Staffing Managers from “nonexempt ... personnel clerks who simply screen applicants to obtain data regarding qualifications and to identify those whó do not' meet the minimum required standards.” WHD Letter at *3 (citing 29 C.F.R. § 541.203(e)). This description of personnel clerks is much closer to the duties of Plaintiffs than the description of Staffing Managers. The majority acknowledges the differences between the Staffing Managers discussed in the WHD Letter and Plaintiffs’ positions, and even says that the differences are significant enough that Randstad could not have relied in good faith on the WHD Letter. In my view, the differences are so significant that the WHD Letter makes clear that Plaintiffs’ matchmaking duties fall outside of the administrative exemption. . , Therefore, I disagree with the court that Plaintiffs’ matchmaking duties fall within the FLSA’s administrative exemption. I would reverse the district court’s judgment. Therefore, as to the part of this court’s judgment affirming the . district court’s grant of summary judgment, I respectfully dissent: