**Elaine CHAO, Secretary of Labor,
United States Department of
Labor, Plaintiff,**

v.

**NORTH CAROLINA GROWERS ASSO-
CIATION, Sexton Tree Farms and
Sexton Associates, Highland Fraser
Firs, and New River Tree Co., as joint
employers, Defendants.**

No. 5:99–CV–7–V.

United States District Court,
W.D. North Carolina.
Statesville Division.

Sept. 4, 2003.

Dana L. Ferguson, Channah S. Broyde, Atlanta, GA, for plaintiff.

W. R. Loftis, Constangy, Brooks & Smith, LLC, Winston–Salem, NC, Monte B. Lake, Robert E. Williams, Christine M. Cooper, McGuiness & Williams, Washington, DC, for defendants.

## ORDER

VOORHEES, District Judge.

THIS MATTER is before the Court upon the parties' cross-motions for summary judgment. The critical issue in this

case of first impression is whether Defendants' employees are "employed in agriculture" such that Defendants are exempt from paying overtime wages pursuant to the Fair Labor Standards Act (hereinafter "FLSA" or "the Act"), 29 U.S.C. § 201 *et seq.*[1]

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. But the party opposing summary judgment may not rest upon mere allegations or denials, and a "mere scintilla of evidence" is insufficient to overcome summary judgment. *Id.* at 249–50, 106 S.Ct. 2505.

In considering motions for summary judgment, courts view the facts and inferences in the light most favorable to the party opposing the motion. *Id.* at 255, 106 S.Ct. 2505; *Cole v. Cole,* 633 F.2d 1083, 1089 (4th Cir.1980). Summary judgment, consequently, is proper where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Ze-nith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotations omitted).

## II. BACKGROUND[2]

Defendants Sexton Tree Farms and Sexton Associates, Highland Fraser Firs, and New River Tree Company (hereinafter "Growers") grow Christmas trees for sale during the holiday season, and have done so from at least 1993 to the present. Because of the seasonal nature of Christmas tree planting, tending, and harvesting, Growers need a substantial number of workers at certain points during the year, but require fewer workers during other periods of the year. Due to the nature and seasonality of the work, it is very difficult for Growers to meet their labor needs with workers that are United States citizens. In order to meet their labor needs, Growers enlist the aid of Defendant North Carolina Growers' Association (hereinafter "NCGA"), which is a trade association to which Growers pay annual dues. NCGA arranges the hiring of temporary, unskilled, legal alien agricultural workers for Growers under a program called "H2A," which is administered by the Employment and Training Administration (hereinafter "ETA") of the Department of Labor (hereinafter "DOL"). The term "H2A" is derived from 8 U.S.C. § 1101(a)(15)(H)(ii)(a), which provides that

> the term 'immigrant' means every alien except an alien...having a residence in a foreign country which he has no intention of abandoning who is coming to the United States to perform agricultural labor or services, as defined by the Secretary of Labor in regulations and including agricultural labor defined in sec-

---

1. All cites to the FLSA shall be made with reference to the United States Code.

2. In this section, the Court shall also detail certain undisputed points of law for purposes of setting the framework for the dispute between the parties.

tion 3121(g) of Title 26 and agriculture as defined in section 203(f) of Title 29, of a temporary or seasonal nature.[3]

In addition to the H2A program, the ETA also administers the "H2B" program, which covers alien workers that are in the United States to perform "other temporary service or labor." 8 U.S.C. § 1101(a)(15)(H)(ii)(b). The H2A and H2B programs, created by the DOL pursuant to the Immigration Reform and Control Act (hereinafter "IRCA"), contain various hiring requirements with which all employers must comply prior to hiring temporary alien laborers. The practical distinction between the two is that H2A prescribes an employer's treatment of agricultural workers, whereas H2B prescribes the treatment for nonagricultural workers.

After ensuring Growers' initial compliance with the H2A hiring requirements, NCGA continues to ensure that the workers hired are transported into the United States, housed, trained, supervised, paid, and transported out of the United States. While in the United States at Growers' Christmas tree farms during harvesting season, the H2A workers cut, bale, stack, and load Christmas trees. The H2A workers also plant and shear Christmas trees and apply fertilizer and pesticide where necessary.

■ At this point, it is important for the Court to point out that section 207(a)(1) of the FLSA requires that:

> [e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

However, certain employees are exempt from this requirement. As relevant to the instant case, section 213(b)(12) provides that "any employee employed in agriculture" is exempt from the overtime requirement of section 207(a)(1). For purposes of section 213(b)(12), agriculture is defined as:

> farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production cultivation, growing, and harvesting of any agricultural or horticultural commodities... and any practices (including forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations.

29 U.S.C. § 203(f). Thus, where workers are "employed in agriculture," an employer need not pay that employee overtime because the employee is exempt from the overtime requirement of the FLSA. However, if an employee is engaged in employment activities which are not "agricultural" as defined by the FLSA, an employer must pay that employee overtime pursuant to section 207(a)(1) of the Act.[4] The Employment Standards Administration, Wage and Hour Division (hereinafter "WHA"), a division of DOL, is the agency responsible for enforcing the FLSA with respect to the payment of overtime wages.

When Growers initially enlisted the aid of the NCGA in 1993, ETA informed

---

**3.** The Court notes that, for the purpose of H2A, a worker may be classified as agricultural under either the FLSA, 29 U.S.C. § 203(f), or under the Internal Revenue Code, 26 U.S.C. § 3121(g).

**4.** Unless, of course, the employee is otherwise exempt from the overtime requirement of the Act. In the instant case, Defendant urges only the applicability of the agricultural exemption.

NCGA that Growers were required to treat their workers as nonagricultural H2B workers for purposes of complying with DOL regulations. As an incident to its workers being labeled "nonagricultural" by ETA for purposes of IRCA, NCGA and Growers held the belief that their workers were required to be paid overtime under the FLSA, as they were not "employed in agriculture" so as to be exempt from the overtime requirement of from section 207(a)(1). Thus, from 1993 to 1995, Growers paid their workers overtime pursuant to the FLSA.

However, in the winter of 1995 ETA revised its position, concluding that the workers enlisted by Growers actually fell into the H2A "agricultural" classification for IRCA, even though they might not be considered "agricultural" for purposes of other regulations and statutes.[5] As a result of this reclassification of their workers, Growers took the position that their workers were also "agricultural" for purposes of the FLSA. Thus, Growers concluded, they were no longer required to pay overtime wages to their employees because the employees were exempt from section 207(a)(1) of the FLSA. Beginning in 1996, Growers discontinued paying their workers overtime for weeks in which they worked more than 40 hours.

In November 1996, WHA notified NCGA and Growers that while their workers were classified as "agricultural" for purposes of IRCA, their workers did not qualify as "employed in agriculture" for purposes of exemption from the overtime requirement of the FLSA. According to the WHA, the classification of the workers as "agricultural" under IRCA was based

on the definition of "agriculture" contained in 8 U.S.C. § 1101(a)(15)(H)(ii)(a), which relies on either the FLSA definition *or* the definition contained in section 3121(g) of the Internal Revenue Code. Thus, the WHA informed Growers, the definition of "agriculture" contained in IRCA was not the same definition of agriculture contained in the FLSA, and the WHA was not bound by the ETA's classification under IRCA. As to its interpretation of the FLSA definition of "agriculture," the WHA contended that Christmas tree workers had been consistently treated as "forestry and lumber" workers that were not exempt from the requirements of the FLSA's overtime provision. Defendants disagreed with the WHA interpretation and refused to pay their workers overtime under the FLSA, maintaining that their workers were exempt from the overtime requirements of the Act because the were "employed in agriculture" within the meaning of that term as defined by the Act.

As a result of Defendants' refusal to acquiesce to DOL's interpretation of the Act, the instant enforcement action was filed by Plaintiff seeking payment of back wages plus interest and seeking to permanently enjoin all Defendants from engaging in any future violations of the Act.

## III. LAW AND ANALYSIS

The issue for resolution in this case is whether workers engaged exclusively in the planting, nurturing, and harvesting of Christmas trees qualify as workers "employed in agriculture" for purposes of exemption from section 207 of the Act. To resolve this case of first impression [6], the

---

**5.** Growers contend that compliance with H2A regulations regarding workers is substantially more expensive to employers than compliance with H2B regulations, due to more stringent

housing, wage, and transportation requirements. (Def. St. of Mat. Facts at ¶ 13.)

**6.** The parties have not indicated, and the Court's research does not reveal, any federal

duty of this Court is to determine whether the definition of "agriculture" contained in section 203(f) of the Act encompasses the growing and harvesting of Christmas trees.

### A. Coverage of the Act

■ Before moving to the substantive and determinative issue, the Court shall briefly examine whether Defendants are covered by the Act. The Plaintiff argues that Growers are "employers" under section 203(d) of the Act, and that the NCGA is a "joint employer" falling within coverage of the Act. Section 203(d) defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." This definition was intended to be broad, and envisions that there may be simultaneous multiple employers of a single employee. *Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973). Many factors control a determination of joint employment status, including degree of control over workers, supervisory duties, power to determine pay rates, and the direct or indirect right to hire and fire. *Ricketts v. Vann,* 32 F.3d 71, 74 (4th Cir.1994).

■ Defendants do not challenge Plaintiff's assertions on these points. Clearly, Growers are employers within the ambit of the Act. Equally clear is that NCGA is a joint employer; it supervises workers, arranges for their transportation and payment, and helps resolve any pay disputes. Furthermore, it also recruits, trains, and submits H2A applications to ETA. There is no question that NCGA is a joint employer with Growers, equally responsible for any violations of the Act. Therefore, all Defendants are "employers" within the ambit of the Act, and thus are subject to the overtime requirement of the Act unless an exemption applies.

### B. Agricultural exemption

■■ As discussed above, Defendants do not contend that section 207 of the Act does not apply to them and their employees. Rather, their contention is that their employees are exempt from the Act under section 213(b)(12). The Supreme Court has held that exemptions from the Act's requirements "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960). Furthermore, this Court is bound to construe the FLSA broadly in light of its "humanitarian and remedial" nature, so that Congress' goal of protecting employees will be furthered. *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945). Thus, Defendants bear the burden of showing that their employees fall "plainly and unmistakably" within the narrow exemption contained in section 213(b)(12).

### i) The definition of "agriculture" under the FLSA

■■ In order for the agricultural exemption to apply, the employment engaged in by Defendants' employees must be "agricultural" within the meaning of that term

---

cases interpreting the agricultural exemption from the FLSA with respect to employees engaged exclusively in growing and harvesting Christmas trees. Plaintiff's research has uncovered an Oregon Court of Appeals case which determined that Christmas tree workers do not fall within the agricultural exemp-

tion of section 213(b)(12). *Ochoa v. Weisensee Ranch, Inc.,* 93 Or.App. 520, 763 P.2d 173, 175–77 (1988). The Court does not consider this case when forming its conclusion in this case, as that case is not binding precedent.

as defined by section 203(f) of the FLSA. The Supreme Court has consistently held that section 203(f) contains two definitions of agriculture. *E.g., Farmers Reservoir & Irrigation Co. v. McComb,* 337 U.S. 755, 762–63, 69 S.Ct. 1274, 93 L.Ed. 1672 (1949). The primary meaning of agriculture for the purpose of the FLSA is "farming in all its branches," including certain specific practices such as "cultivation and tillage of the soil, dairying, [and] the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities." 29 U.S.C. § 203(f); *Farmers Reservoir,* 337 U.S. at 762, 69 S.Ct. 1274. Primary agriculture encompasses those activities traditionally associated with the occupation of farming and cultivating land or animals and harvesting the fruits thereof. However, certain activities may also constitute agriculture under the secondary meaning of that term; specifically, any activities which are performed "by a farmer or on a farm as an incident to or in conjunction with such farming operations." 29 U.S.C. § 203(f); *Farmers Reservoir,* 337 U.S. at 762–63, 69 S.Ct. 1274. In other words, work such as clearing wooded areas, building barns, or digging ditches may also be considered agriculture where that work is "incidental to farming and...done on a farm." *Farmers Reservoir,* 337 U.S. at 767, 69 S.Ct. 1274. Pursuant to section 213(b)(12), if the work done by an employee is "agricultural" within either the primary or secondary meaning of that term, an employer need not pay that employee overtime wages.

*ii) Statutory construction*

▮ In construing a statute in a case of first impression, courts first look to the language of the statute itself, then to the legislative history, and then to any interpretations of an administrative agency as an aid to determining Congress' intent. *Bresgal v. Brock,* 833 F.2d 763, 765 (9th Cir.1987). The language of the FLSA is silent on the issue of whether Christmas trees are included in the definition of agriculture for purposes of the FLSA. Not only is the statute silent, but it is also ambiguous; the definition of "agriculture" contained therein could reasonably be interpreted to either include or exclude Christmas tree farming. Furthermore, the only guidance offered by Congress is that it specifically intended to exclude "forestry and lumbering operations" from the definition of agriculture. *See* 82 Cong. Rec. 11,210–14 (1949) (discussing whether to amend the definition of agriculture to include forestry, and ultimately concluding that the definition should not be amended in that respect because it would exempt many forestry workers from the overtime requirement).[7] However, the legislative history does not specifically address whether the growing and harvesting of Christmas trees should be considered forestry and lumbering or agriculture, nor does it provide any guidance as to how a court might make such a determination. Thus, the Court turns to the DOL interpretations of the Act.

*iii) DOL interpretations of "agriculture" with respect to Christmas tree farming*

The DOL has issued several interpretive bulletins specifically construing the growing and harvesting of Christmas trees with respect to the FLSA's agricultural exemption. 29 C.F.R. § 780.115 states:

> engaged unless the forestry and lumbering activity falls within the secondary meaning of "agriculture."

7. Thus, as discussed in the Congressional debates, if an employment activity is within the realm of "forestry and lumbering," the employer must pay overtime to an employee so

[t]rees grown in forests and the lumber derived therefrom are not 'agricultural or horticultural commodities.' Christmas trees, whether wild or planted, are also not so considered. It follows that employment in the production, cultivation, growing, and harvesting of such trees or timber products is not sufficient to bring an employee within section [203(f)] unless the operation is performed by a farmer or on a farm as an incident to or in conjunction with his or its farming operations.

Thus, Plaintiff's contention in the instant case is that if Defendants' employees fall within the agricultural exemption, they must fit the secondary definition of agriculture, as Defendants' activities cannot fit within the primary definition of agriculture pursuant to the DOL interpretation in section 780.115.

29 C.F.R. § 780.208—aptly titled "Forest and Christmas tree activities"—states that "[t]he planting, tending, and cutting of Christmas trees do not constitute farming operations. If such operations on forest products are within section [203(f)], they must qualify under the second part of the definition dealing with incidental practices." Again, this clearly indicates the DOL's position that Christmas tree farming does not qualify as agriculture—and thus is not exempt from section 207 of the Act—unless it falls within the secondary meaning of that term.

As clearly as sections 780.115 and 780.208 exclude the growing and harvesting of Christmas trees from the definition of agriculture, sections 780.201 and 780.200 equally clearly bring Christmas tree work-ers within the realm of "forestry and lumbering." 29 C.F.R. § 780.201 states: "[t]he term 'forestry or lumbering operations' refers to the cultivation and management of forests, the felling and trimming of timber, the cutting, hauling and transportation of timber...and similar products, and similar operations...The gathering of wild plants and of wild or planted Christmas trees are included." Based on the foregoing section, 29 C.F.R. 780.200 concludes that "employees of an employer engaged exclusively in forestry or lumbering operations are not considered agricultural employees."

*ii) The standard for according deference to the DOL's interpretation*

 It is important for the Court to note that the DOL regulations discussed in the preceding section are mere interpretations. Even though they are published in the Code of Federal Regulations, the interpretations in question were not promulgated after a notice and comment period or after a formal adjudication.[8] *See Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). As the Supreme Court concluded in *Skidmore v. Swift & Co.*, interpretive bulletins "are not, of course, conclusive even in the cases with which they directly deal...They do not constitute an interpretation of the [FLSA]...which binds a district court's processes, as an authoritative pronouncement of a higher court might do." 323 U.S. 134, 139, 65 S.Ct. 161, 89 L.Ed. 124 (1944). Nevertheless, "the [DOL's] policies are made in pursuance of official duty, based upon more specialized experience and broader investigations than

---

**8.** Formal agency rules or adjudications are subject to the notice-and-comment rigors of the Administrative Procedure Act, and are entitled to controlling deference under the Supreme Court's decision in *Chevron U.S.A. Inc., v. Natural Resources Defense Council,* *Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), where the regulation contains a "reasonable interpretation of an ambiguous statute." *Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000).

is likely to come to a judge in a particular case...The fact that the [DOL's] policies and standards are not reached by trial in adversary form does not mean they are not entitled to respect." *Id.* Therefore, "[t]he weight of such [an interpretation] in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade, if lacking the power to control." *Id.* at 140, 65 S.Ct. 161.

### iii) The level of deference to be accorded to the DOL's interpretation

 The foregoing considered, the essential issue in this case is whether the DOL interpretations excluding Christmas tree farming from the definition of agriculture are entitled to deference pursuant to *Skidmore*. If the DOL interpretation is entitled to deference pursuant to *Skidmore*, this Court is appropriately compelled to conclude that Defendants' employees do not fall within the agricultural exemption; on the other hand, if the DOL interpretation lacks "the power to persuade," this Court must consider whether Defendants fall within the plain terms of the statute. Because the Court concludes that the interpretation in question carries with it the "power to persuade," the Court defers to the DOL's construction of the FLSA in this circumstance.

In making this determination, the Court finds of particular importance that the DOL has maintained the current—and apparently, the original—interpretation since at least 1956. 21 Fed.Reg. 2,933 (April 26, 1956) (formerly codified at 29 C.F.R. § 780.12(c)(3)) (providing same language as the current interpretive bulletin). At that time, the DOL adopted its current position and has maintained that position in multiple opinion letters issued since that time. *See* Opinion Letter of 7/24/62 (defending DOL position with respect to Christmas trees and the agricultural exemption); Fraser Opinion Letter of 1/9/91 (reexamining DOL position with respect to the agricultural exemption and concluding that Christmas tree farming does not fit within it). That the instant case is a case of first impression, despite DOL having maintained the same position since 1956, indicates to the Court that the interpretation in question is entitled to deference. Had the interpretation been as completely unreasonable as Defendants would urge, there would have been at least one case in which a grower challenged the interpretation. Apparently, the interpretation was reasonable enough for nearly fifty years; this Court sees no compelling reason that it is now unreasonable such that it is not entitled to deference.

Also of importance is that the DOL position is well-reasoned. Its position can be summarized as follows: "There is no indication in the legislative history of the FLSA that Congress intended to include Christmas tree production within the agricultural exemption. Since trees are a part of forestry, which is subject to only a limited statutory exemption, the Administrator has no authority to include growing trees, even in an operation similar to farming, in the agricultural exemption." Fraser Opinion Letter of 1/9/91 at 2. Thus, as Defendants argue here, the DOL in 1991 essentially acknowledged that growing Christmas trees is similar to agriculture. Nonetheless, it reasoned, because the legislative history clearly expresses Congress' intent to exclude forestry—the growing of trees—from the agricultural exemption, it would make no sense to include the growing of Christmas trees within the ambit of that exemption. It is clear from the Fraser letter that the DOL gave substantial consideration to legislative history in crafting its interpretation. The position is not

arbitrary nor merely contrarian. Rather, it appears to be the DOL's considered effort to construe a statute in a context in which Congress has provided little guidance.

Defendants make several arguments as to why the DOL interpretation should be granted no deference. First, Defendants argue that because the DOL has interpreted the growing of Christmas trees to be agricultural for purposes of IRCA, classifying its workers as "forestry and lumber" for FLSA purposes is inconsistent. On the contrary, however, the DOL interpretation of the FLSA definition of agriculture has remained constant for nearly fifty years. The reason for the DOL's interpretation under IRCA is that the definition of agriculture for IRCA purposes encompasses a broader definition than that under the FLSA. There are two statutes which define agriculture for IRCA purposes: section 203(f) of the FLSA *and* section 3121(g) of the Internal Revenue Code. 8 U.S.C. § 1101(a)(15)(H)(ii)(a). Apparently, DOL has concluded that Defendants' workers meet the IRCA definition for "agricultural" under the Internal Revenue Code, section 3121(g), but not under the FLSA portion of that definition. The distinctions thus made are not arbitrary or irrational.

Second, Defendants spend substantial time and effort attempting to persuade the Court that the growing and harvesting of Christmas trees closely mirrors the primary definition of agriculture contained in the statute itself. Therefore, it argues, the DOL interpretation is plainly incorrect and entitled to no deference. Defendants' efforts are ineffectual, however, because Christmas tree farming is no more clearly "agriculture" than it is "forestry and lum-

bering" for purposes of the FLSA definition in question. The growing and harvesting of Christmas trees is obviously a sophisticated process requiring care, cultivation of the soil, and selective harvesting.[9] In this respect, it resembles agriculture. However, Christmas tree farming equally resembles forestry and lumbering, as it involves the planting, cutting, baling, and loading of *trees*. As discussed above, the DOL's position is not unreasonable.

Third, Defendants argue that its operations are similar, if not identical to, those of nursery operations, which the DOL considers agricultural for FLSA purposes. *See* 29 C.F.R. § 780.205. Thus, they argue, the DOL is treating them inconsistently and arbitrarily. Nurseries cultivate ornamental and decorative trees, shrubs, plants, and vines. *Id.* While it is true that there are similarities between the conduct engaged in by employers operating nurseries and those operating Christmas tree farms, Congress, the law, and the DOL must draw the line somewhere. In this case, the DOL's interpretation of the FLSA led to the conclusion that growing Christmas trees exclusively is not agriculture within the ambit of that term as used in the Act. The DOL has maintained that reasonable interpretation for nearly fifty years. While it is true that employers operating nurseries and employers operating Christmas tree farms engage in some similar conduct, where there is a longstanding agency history of treating conduct in a certain manner, this Court is disinclined to overrule that treatment, especially where that treatment is reasonable in light of the directive given by Congress in the statute in question.

Finally, Defendants put forward the argument that the DOL has, in fact, actually

---

**9.** Plaintiff challenges the sophistication of Defendants' operations. As Defendants' expert Dr. Shelton testified throughout his deposi-

tion, however, there is undoubtedly substantial expertise involved in properly growing and harvesting Christmas trees.

classified Christmas tree workers as agricultural for FLSA purposes in the past. Def. Mem. in Supp. of Summ. Judg. at 58; Def. St. of Mat. Facts at ¶ 104. They argue that, on at least one occasion, the Chicago Division of ETA classified Christmas tree workers in its territory. Therefore, they posit that DOL had no national policy with respect to the treatment of Christmas tree workers under the FLSA. This argument is incorrect on two grounds. First, the DOL's national policy is clearly reflected in the interpretive bulletins published at 29 C.F.R. §§ 780.115 and 208, and there are no inconsistencies in either of those sections. Second, the fact that a DOL division treated certain workers in violation of that national policy in no way changes the fact that the national policy is unequivocally stated in the Code of Federal Regulations. A single deviance from that policy does not indicate that such treatment was anything other than a departmental error.[10]

■ To conclude, the Court finds that the interpretation espoused by the DOL is inherently reasonable in light of the directive of Congress. More importantly, the interpretation is longstanding. The Court finds that the DOL's conclusion that Defendants' workers do not meet the agricultural exemption is entitled to deference. Thus, this Court is obliged to conclude that Defendants' workers are not, in fact, employed in agriculture such that they qualify for exemption from the overtime requirement of the FLSA.

The Court is not insensitive to Defendants' general complaints; when one's workers are classified by an agency as "agricultural" for purposes of one statute

and as "forestry" for purposes of another, an inherent unfairness is apparent. Defendants have attempted to comply with the FLSA in the instant case, and have advocated a logically-held and sensible position given the interpretations by the ETA and WHA. It seems, and is indeed, unfair to Defendants to classify workers in two different manners where the result of those classifications will be increased cost of compliance on both ends. Nonetheless, presumably the regulatory authorities must balance fairness as to both workers and employers. The only requirement is that the agency enforcing the will of Congress do so in a manner consistent with that will. In this case, the policies underlying the FLSA and the language of the statute itself dictate that the interpretation urged by Plaintiff is correct. If Defendants seek further redress, that redress would lie with Congress, not with appellate review.

## C. Back wages

■ Pursuant to section 217 of the Act, a district court may enjoin the withholding of overtime wages where an employer has failed to pay such wages. 29 U.S.C. § 217. The parties have stipulated that, pursuant to section 255 of the Act, the applicable period to which Defendants' liability for back wages extends is August 4, 1996, two years before the initial filing of the Complaint. The Court having found that Defendants' employees did not meet the standard for exemption from the FLSA's overtime provision, Defendants shall be required to pay restitution to any affected workers in the form of back wages for the period from August 4, 1996,

---

**10.** Of course, if every other DOL division had been consistently treating Christmas tree workers in a similar manner, the Court might take issue with such de facto treatment. However, there is no indication that the deviance by the Chicago division was anything other than a mistake, especially viewed in light of the WHA's unequivocal position in this case and other cases.

until such time as Defendants comply in full with the overtime requirement of the Act. Such amount shall include the appropriate interest, to be calculated by the parties.

Defendants indicate that they dispute the basis for Plaintiff's calculation of the back wages owed. The Court further notes that the issue of joint and several liability might arise in this case, particularly as a result of NCGA's joint employer status.[11] To the extent the parties are unable to settle any disputes regarding the amount of and by whom back wages are owed, this Court shall retain equitable jurisdiction to determine such amounts and the liability therefor where the matter is properly brought before it.

### D. Permanent injunction

 Pursuant to section 217 of the Act, a district court may also grant permanent, prospective injunctive relief from future violations of the Act. Factors guiding a district court's grant of a prospective injunction include "the employer's previous noncompliance and the dependability of its promise of future compliance." *Marshall v. Van Matre*, 634 F.2d 1115, 1117 (8th Cir.1980). Although the Court does not doubt that Defendants will, in fact, comply with the requirements of the FLSA in the future, the Court will nonetheless grant the injunction to ensure such future compliance.

### IV. ORDER

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED. IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED that Defendants shall pay back wages as indicated in section III.C. of this Order.

IT IS FURTHER ORDERED that Defendants shall be permanently restrained and enjoined from violating 29 U.S.C. § 207 with respect to any of its workers.

11. This matter is not before the Court, though it would seem that Growers should be liable for the back wages generated by their own failure to pay overtime to their own employ-ees. Even so, it is not indicated by the parties the extent to which NCGA, as a joint employer, might be liable for back wages.