Antonio CAMARGO

v.

**TRAMMELL CROW INTEREST COMPANY, d/b/a Crow Holdings.**

**Civil Action No. 6:03 CV 1.**

United States District Court, E.D. Texas, Tyler Division.

Feb. 23, 2004.

---

Richard S. Fischer, Nacogdoches, TX, for Plaintiffs.

Steven Randolph McCown of Littler, Mendelson, Dallas, TX, for Defendants.

## MEMORANDUM OPINION

DAVIS, District Judge.

This is an action for overtime pay pursuant to the Fair Labor Standards Act ("FLSA") which came on for hearing before the Court, without a jury, the 3rd day of February, 2004. The principle issue presented is whether or not Plaintiff's work was of such a nature that it fell under either the Agricultural Exemption or the Forestry Exemption from overtime pay requirements of the FLSA. After considering the pleadings, the evidence, and the arguments presented, the Court makes the following findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure. To the extent that any conclusion of law is deemed to be a finding of fact, it is adopted as such; and likewise, any finding of fact that is deemed to be a conclusion of law is so adopted.

### FACTUAL BACKGROUND

Defendant, Trammel Crow Interest Company, d/b/a Crow Holdings ("Crow"), operates an enterprise called "Mill Creek Farm," which consists of approximately 10,000 acres in Wood County, Texas. The primary commercial activity of Mill Creek Farm is the growth of timber for harvest and sale. Of the 10,000 acres, 8,778[1] acres

---

1. Plaintiff's Exhibit "3", a survey of the property showed this to be the actual amount of acreage dedicated to timber production.

is forested and dedicated to timber production. In 2003, $170,000 in timber was sold. In 2002, $140,000 in timber was sold. The timber operation is primarily passive. Selection and appraisal of timber to be cut in the field (cruising as it is called), the actual cutting and harvesting of the timber, and the transporting of the cut logs to buyer mills is all done by outside contractors. Some forestry related work is done by Crow employees including removing deadwood from fire breaks and fence rows, maintaining fences, firebreaks, and roads into the forested area, and annual planting of seedlings. The remaining acreage contains a cattle operation, of approximately 100 cows, which are bred for the purpose of producing calves and a small hay production operation. In 2003, $26,000.00 in cattle were sold. There is also a small fruit tree operation of 40 to 60 trees, which have not yet produced a crop.

The property is also the site of a private home of Trammel Crow, a swimming pool with bath house, a guest house, one or two residences for managerial employees, a building containing the office of the operation, vehicle and animal barns, and storage sheds. The lawn area around the private residences, and other buildings consists of 14 to 16 acres. The acreage around Mr. Crow's residence consists of about 1/3rd of this lawn acreage. There is considerable recreational use of the property by the owner, his family, and guests.[2]

Mill Creek Farm employs approximately 15 people, including two housekeepers at

the Crow residence, three managerial or supervisory employees, a bookkeeper, a housekeeper at the offices, two cowboys involved in the cattle operation, and six other manual labor employees, including Plaintiff, Antonio Camargo ("Camargo").

Prior to April 15, 2000, Camargo worked almost exclusively in Crow's commercial nursery operation, which was clearly an agricultural enterprise. However, Crow sold off the nursery operation in April 2000 and Camargo was reassigned to other duties on the property. Camargo's duties varied with the season. In warm weather months, his job consisted largely of lawn and garden maintenance, watering, mowing, planting and tending ornamental plants. His hot weather duties also included washing the numerous vehicles owned by the operation, including cars, jeeps, trucks and 4 wheelers ("ATV's") and motorcycles that were used by guests.

His usual duties during all seasons, until the hiring of Marcelina Vargas Rubio in August, 2002,[3] included cleaning the office building, which took approximately one hour a day. Camargo's general duties also included cleaning up porches and the area around the private residences where chickens made messes, picking up trash, and cleaning the machine shop. In colder months the lawn care duties changed from watering and mowing to raking leaves, picking up trash, which included fallen tree branches around the lawns and burning them. Plaintiff also filled in pot holes in

---

**2.** Plaintiff's Exhibit "2," the desk calendar of Scott Riddle, Manager of the Farm, reflects the arrival of many guests and the heavy preparation done by the hourly workers at the property in support of recreational use. Riddle assigned the hourly workers, including Plaintiff, to such tasks as setting up cots at the camp house, supplying clean towels, cleaning the boats and the boat house, cleaning the

bath house, cleaning the trails, fueling the generator, washing laundry, cleaning the boat house roof of debris, splitting and stacking firewood, washing the ATV's and golf carts, and cleaning around the pool and bath house.

**3.** Plaintiff's Exhibit 1, the time sheets from Mill Creek Farm first show that Ms. Vargas was paid for the week of August 3, to August 9, 2002.

roads between the various buildings, split fire wood for residents or guests, washed windows, hauled brush, and other minor jobs on the property. Occasional duties included picking up dead tree branches from fire breaks and along fence lines and occasional fertilizing of fruit trees. He would also clean areas around deer feeders and plant grass around deer feeders in anticipation of the deer hunting season. While on rare occasions Plaintiff worked in the orchard or in the forest, the greatest majority of Plaintiff's job duties centered around the residences, and the lawns and property around the residences, vehicle barns, and office building.[4]

Plaintiff's rate of pay was as follows:

| Dates: | Pay Rate Per Hour | Hours in Excess of 40 per week |
|---|---|---|
| 1/2/01 [5]–8/30/01 | $7.35 | 294 |
| 8/31/01–8/31/02 | $7.72 | 565.5 |
| 9/1/02–11/21/02 | $7.95 | 153 |

Plaintiff was not paid overtime for his hours in excess of forty hours per week.

### THE FAIR LABOR STANDARDS ACT

As an initial matter, the Court notes that for the FLSA to apply, (1) an employee must have been engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 207(a)(1) and (2) the annual gross volume of sales made or business done by Defendant has exceeded Five Hundred Thousand and No/100 Dollars ($500,-000.00), exclusive of all excise taxes pursuant to 29 U.S.C. § 203(s)(1)(A). Defendant does not contest these issues and the Court finds that the requirements of 29 U.S.C. § 207(a)(1) and 29 U.S.C. § 203(s)(1)(A) are met.

The Fifth Circuit has described the role of the FLSA as follows:

The Fair Labor Standards Act was enacted to provide a minimal standard of living necessary for the health, efficiency, and general well-being of workers and to prescribe certain minimum standards for working conditions. In applying the Act to the facts at hand, we must liberally construe it 'to apply to the furthest reaches consistent with congressional direction' in fulfillment of its humanitarian and remedial purposes.

Brennan v. Plaza Shoe Store, Inc., 522 F.2d 843, 846 (8th Cir.1975), citing Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243 (1959). See also Brennan v. Wilson Building, Inc., 478 F.2d 1090, 1094 (5th Cir.), cert. denied, 414 U.S. 855, 94 S.Ct. 156, 38 L.Ed.2d 105 (1973). Exemptions are to be narrowly construed against the employers seeking to assert them and their application are to be limited to those establishments plainly and unmistakably within their terms and spirit. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960). The U.S. Department of Labor's regulations interpreting the FLSA are entitled to def-

---

**4.** Plaintiff's Exhibit "2," the desk calendar of Scott Riddle supports Plaintiff's testimony about the nature of his duties. The desk calendar occasionally records the jobs assigned to the crew of 5 to 6 men who were designated as B & G, a group to which Plaintiff was assigned, presumably for Building and Grounds, and LS, an unknown designation. The jobs assigned to the LS and sometimes B & G group occasionally included disking fire lines, replacing rotten fence posts or cutting dead pines from around the houses and buildings, and some road repair. However a much larger portion of the jobs assigned to these 5 or 6 men, especially the B & G group, were things like cleaning around the main house and patio, preparing for guests, as outlined above, mowing, watering, raking and burning leaves and much lawn and garden planting and maintenance, especially around the residences.

**5.** Plaintiff has withdrawn his claim for overtime pay for any period prior to two years before the filing of this law suit on January 2, 2003.

erence. *Holly Farms Corp. v. NLRB,* 517 U.S. 392, 398–99, 116 S.Ct. 1396, 134 L.Ed.2d 593 (1996).

### The Agricultural Exemption:

The FLSA contains an exemption for agricultural activity, found at 29 U.S.C. § 203(f), that exempts from the overtime pay requirement primary agriculture, which means farming in all its branches, and secondary agriculture, which means other practices performed either by a farmer or on a farm incidental to or in conjunction with the farming operations. *Farmers Reservoir & Irrigation Co. v. McComb,* 337 U.S. 755, 762–63, 69 S.Ct. 1274, 93 L.Ed. 1672 (1949). Plaintiff did minimal agricultural work. Crow had other hourly workers, designated as "cowboys" who were assigned to the cattle and related activities.

■■■ The inclusion of "forestry or lumbering operations" by a farmer or on a farm within the 29 U.S.C. § 203(f) exemption limits the forestry and lumbering operations which are exempt under that provision. 29 C.F.R. § 780.200. Forestry and lumbering operations not performed by a farmer or on a farm do not fall within the primary agricultural exemption to the FLSA's overtime requirements. *See Chao v. North Carolina Growers Association,* 280 F.Supp.2d 500, 507 (W.D.N.C.2003); 29 C.F.R. § 780.115. In determining whether activities fit within the exemption for secondary agriculture, the question is

"whether the ... employee's activities are inevitably 'incident to or in conjunction with' the farming operation...." *Holly Farms,* 517 U.S. at 401–04, 116 S.Ct. 1396.

■■ For forestry or lumbering operations to be covered by the agricultural exemption, they must be subordinate to farming operations. 29 C.F.R. § 780.202. Small scale farming or other agricultural activities in conjunction with a large forestry or lumbering operation do not fit within that exemption.[6] Defendant's forestry operations were not subordinate to its farming operations. If anything, its agricultural activities were subordinate to its forestry operation. Accordingly, the FLSA's agricultural exemption is therefore not applicable to the work Plaintiff performed for the Defendant.

### The Forestry Exemption:

The FLSA exempts employees performing certain specific activities in forestry or lumbering operations from the Act's overtime requirements if the number of employees so employed by the employer does not exceed eight. 29 U.S.C. § 213(b)(28). The specific activities listed are planting or tending trees, cruising, surveying, or felling timber, preparation or transportation of logs or other forestry products to the mill, processing plant, railroad or other transportation terminal.

**6.** 29 CFR § 780.202 provides: "Subordination to farming operations is necessary for exemption. While section 3(f) speaks of practices performed 'in conjunction with' as well as 'incident to' farming operations, it would be an unreasonable construction of the Act to hold that all practices were to be regarded as agricultural if the person performing the practice did any farming, no matter how little, or resorted to tilling a small acreage for the purpose of qualifying for exemption (*Ridgeway v. Warren,* 60 F.Supp. 363 (M.D.Tenn.); *in re Combs,* 5 WH Cases 595,

10 Labor Cases 62,802 (M.D.Ga.)). To illustrate, where an employer owns several thousand acres of timberland on which he carries on lumbering operations and cultivates about 100 acres of farm land which are contiguous to such timberland, he would not be engaged in agriculture so far as his forestry or lumbering operations are concerned. In such case, the forestry or lumbering operations would clearly not be subordinate to the farming operations but rather the principal or a separate business of the 'farmer.'" 29 CFR § 780.202.

■ Only a negligible, if any, portion of Plaintiff's work consisted of the activities specified in the FLSA's exemption for forestry or lumbering operations. Unlike the agricultural exemption, the forestry exemption to the FLSA does not include a secondary exemption for "any practices . . . incident to or in conjunction with" the forestry operations. *Compare* 29 U.S.C. § 203(f) *with* 29 U.S.C. § 213(b)(28). Therefore, Plaintiff's employment with Defendant is not subject to the FLSA's exemption for forestry or lumbering operations.

Even if Plaintiff had performed any activities specified in the FLSA's forestry or lumbering exemption, in every week for which he seeks overtime pay, he performed other activities that did not fall within the exemption. If an employee in the same work week performs both work which is exempt from overtime requirements and work that is not exempt, he is not exempt that week, and the overtime pay requirements of the FLSA are applicable. 29 C.F.R. § 780.11.

### CONCLUSION

■ For the foregoing reasons, Defendant is liable to Plaintiff for unpaid overtime wages in the amount of $ 3,871.46 and is also liable to Plaintiff for an equal amount as liquidated damages. 29 U.S.C. § 216(b). Because Plaintiff has prevailed on his claim, the costs of litigation, including Plaintiff's reasonable attorney's fees, should properly be assessed against the Defendant pursuant to 29 U.S.C. § 216(b). The Plaintiff shall be allowed 20 days after the date of this Order to make his properly supported application for attorney's fees and costs. Plaintiff shall disclose to Defendant: 1.) the total number of attorney hours for which fees will be sought; 2.) the exact hourly rate that will be requested; and 3.) the total amount of costs for which recovery will be sought. Defendant shall have 10 days to file any objection to Plaintiff's application for attorney's fees and costs. A Final Judgment will then be entered.

So **ORDERED** and **SIGNED** this ___ day of February, 2004.